Olga Rodríguez Rosado, demandante y recurrente, *v.* José Orlando Zayas Martínez, demandado y recurrido.

Número: RE-92-557          *Resuelto:* 21 de mayo de 1993

*María Rodríguez Cintrón*, abogada de la parte recurrente; *William Pagán Rodríguez*, abogado de la parte recurrida.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

La recurrente Olga Rodríguez Rosado acude ante nos para que revisemos la sentencia emitida por el Tribunal Superior, Sala de Aibonito, mediante la cual el juez de instancia ordenó una pensión alimentaria de $200 mensuales a favor de los hijos menores de las partes, a pesar de que éstas habían llegado a un acuerdo a los efectos de que la pensión alimentaria sería por la suma de $300 mensuales, luego que se revelara que el alimentante tenía una fuente de ingresos independiente que no aparecía en la Planilla de Información Personal y Económica.([1]) Veamos los hechos que dieron lugar a esta controversia.

---

([1]) La Planilla de Información Personal y Económica es el formulario preparado por la Oficina de Administración de los Tribunales la cual, según dispone la Ley Especial de Sustento de Menores, 8 L.P.R.A. sec. 515:

"... [sirve] de guía respecto de la información mínima requerida sobre la situación económica de las partes, las necesidades del alimentista y la capacidad de pago del alimentante. El formulario completado y juramentado, u otro documento similar, también juramentado, que contenga toda la información requerida deberá radicarse en la secretaría del tribunal y notificarse a la otra parte con antelación a la vista y sujetará al declarante a las penalidades dispuestas para el delito de perjurio."

I

El 25 de junio de 1991 la señora Olga Rodríguez Rosado presentó una demanda de divorcio por la causal de trato cruel contra su entonces esposo, el recurrido José Orlando Zayas Martínez. Los cónyuges procrearon dos (2) hijos; Omar José y Omaris, de doce (12) y seis (6) años respectivamente.

El 8 de agosto de 1991 se celebró una vista ante la Examinadora de Pensiones Alimentarias en la cual se sometieron las correspondientes Planillas de Información Personal y Económica. En dicha vista fueron ofrecidas y admitidas en evidencia unas libretas de recibos firmadas por el recurrido que *evidenciaban ingresos adicionales devengados por éste, los cuales no se reflejaban en la referida planilla.*

El 5 de marzo de 1992 las partes comparecieron a otra vista ante la misma Examinadora con sus correspondientes representantes legales. En dicha vista y mediante estipulación firmada por las partes y por sus abogados, se acordó que se fijaría la pensión alimentaria por la suma de $300. Además, se indicó que el alimentante pagaría una deuda por concepto de renta y que mantendría vigente una póliza de seguro médico para beneficio de los menores.

Luego de que se llegara a dicho acuerdo, una Examinadora de Pensiones Alimentarias distinta a la que presidió las dos (2) vistas aquí reseñadas, recomendó al juez de instancia una pensión alimentaria de entre $200 a $253.02. Dicha Examinadora entendió que la pensión por la cantidad de $300 "podría ocasionar problemas futuros, que revertirían en la Sala de Relaciones de Familia de este Tribunal ya que la cantidad estipulada sobrepasa el 50% del ingreso neto del promovido". *Exhibit* XII, pág. 3.

Según surge de los autos, esta nueva Examinadora, al hacer el análisis para calcular la pensión alimentaria recomendada, no tomó en cuenta los ingresos adicionales que devengaba el recurrido. Este error respondió a que tales

ingresos no fueron informados por el señor Zayas en su Planilla de Información Personal y Económica, única fuente utilizada por la Examinadora en su análisis.

El 12 de marzo de 1992 el tribunal de instancia emitió una resolución en la que aprobó la estipulación en todas sus partes, excepto en aquella que disponía la suma a pagarse, la cual fijó en $200 a tenor con la recomendación emitida por la última de las Examinadoras que intervinieron en el caso.

Habiendo sido denegada una moción de reconsideración, la demandada acude ante nos mediante recurso de revisión y aduce la comisión de dos (2) errores por parte del tribunal de instancia.([2]) En el primer señalamiento de error la recurrente alega que el tribunal se equivocó al hacer la determinación de ingresos del recurrido, puesto que no tomó en consideración los ingresos adicionales que este último devenga. En el segundo señalamiento de error la recurrente alega que el tribunal erró al adoptar la recomendación que hizo la Examinadora, puesto que ya las partes habían acordado la suma a pagarse en concepto de pensión alimentaria.

El 8 de enero de 1993 ordenamos a la parte recurrida para "[que mostrase] causa por la cual no deb[í]a expedirse el auto solicitado y en su consecuencia, modifica[se] la sentencia recurrida para *fijar la pensión alimenticia en $300.00, según lo acordaron las partes el 5 de marzo de 1992*". Resolución de 8 de enero de 1993. La parte recurrida ha comparecido. Resolvemos.

---

([2]) Los señalamientos de error señalados por la recurrente disponen lo siguiente:

"Primer Error:

"Erró el tribunal sentenciador al hacer la determinación de los ingresos del padre alimentante, a los fines de fijar la pensión alimenticia a ser impuesta a favor de los menores en el caso de divorcio.

"Segundo Error:

"Erró el tribunal sentenciador al no aceptar la Estipulación relativa a la pensión alimenticia de los menores suscrita en el caso de divorcio." Petición de revisión, pág. 5.

## II

Discutiremos en primer lugar el segundo señalamiento de error en el cual la parte recurrente alega que el juez de instancia *siempre* está obligado a aceptar la estipulación a que las partes hayan llegado con respecto a la pensión alimentaria de sus hijos menores.

Como regla general, un juez aceptará los convenios y las estipulaciones que las partes le sometan para así finalizar un pleito o un incidente dentro del mismo. Dichos acuerdos, luego de su aceptación por parte del tribunal, tendrán el efecto de cosa juzgada. *Canino v. Bellaflores*, 78 D.P.R. 778 (1955); *Lausell Marxuach v. Díaz de Yáñez*, 103 D.P.R. 533 (1975).

Sin embargo, esta no es la normativa en los casos relacionados con alimentos de menores. "La obligación alimenticia 'tiene su fundamento en el derecho a la vida configurado como un derecho de la personalidad'. P. Beltrán De Heredia, *La obligación legal de alimentos entre parientes*, Salamanca, Ed. Anaya, 1958, pág. 33." *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 72 (1987). Es por esto que reiteradamente hemos resuelto que dichos casos están revestidos del más alto interés público. *Robles v. Otero de Ramos*, 127 D.P.R. 911 (1991). Precisamente por la gran importancia socioeconómica que permea este asunto, expresamos en *Negrón Rivera y Bonilla, Ex parte*, supra, pág. 76, que en lo que respecta a estipulaciones sobre alimentos de menores

> ... el juez tiene el deber de asegurarse que lo acordado no es dañino para los menores. Esto implica que lo estipulado satisfa[ga] adecuadamente las necesidades de los menores y que el alimentante tiene medios económicos suficientes para cumplir con lo acordado.

Asimismo, y para fortalecer la política pública que tiene el Estado de velar por el bienestar de los menores, el legislador, mediante la Ley Especial de Sustento de Menores,

Ley Núm. 5 de 30 de diciembre de 1986 (8 L.P.R.A. secs. 501–529), ordena que las estipulaciones de alimentos de menores que se logren en aquellos casos que estén bajo consideración de un juez del Tribunal Superior sean sometidas a este último para su *aprobación*. 8 L.P.R.A. sec. 513.

Por consiguiente, el juez de instancia, en su función evaluativa, no debe aceptar de plano lo acordado por las partes. Claro está, al llevar a cabo dicha evaluación *el Juez siempre deberá darle gran peso a lo estipulado por éstas*, puesto que son las partes quienes mejor conocen su propia capacidad económica.

A esos efectos debemos concluir que en el caso de autos el juez tenía la potestad en ley para, después de evaluarla a la luz de todos los hechos y circunstancias presentes en el caso, aprobar o rechazar la estipulación sobre la pensión alimentaria en conformidad con los criterios antes expuestos. Por lo tanto, este error no fue cometido.

## III

En su primer señalamiento de error la recurrente alega que el Juez de instancia erró al analizar los pormenores del caso de autos, puesto que la recomendación de la Examinadora de Pensiones Alimentarias estaba fundada en un ingreso menor del que en realidad devengaba el recurrido. A esos efectos, la recurrente alega que el Juez de instancia debió haber rechazado la recomendación sobre la cuantía de la pensión alimentaria que le hizo la Examinadora y, en su lugar, haber aceptado lo acordado por las partes. Tiene razón la recurrente.

Para calcular la cuantía de la pensión alimentaria se deberá tomar en consideración todo lo que sea indispensable para el sustento, habitación, vestido, asistencia médica y educación del alimentista, según la posición social de la familia. Art. 142 del Código Civil, 31 L.P.R.A. sec. 561; *Guadalupe Viera v. Morell*, 115 D.P.R. 4 (1983). Véase,

también, Sec. III del Art. 4 de la Ley Especial de Sustento de Menores, 8 L.P.R.A. sec. 503. Ahora bien, al analizar la capacidad económica del alimentante, tanto la Examinadora como el Juez deberán tomar en cuenta *todos* los ingresos devengados por el alimentante, aunque los mismos no aparezcan informados en la Planilla de Información Personal y Económica del alimentante. Véase *López v. Rodríguez*, 121 D.P.R. 23 (1988).[3]

Es forzozo concluir que en el caso de autos, lo acordado por las partes refleja en una forma más precisa la capacidad económica del alimentante puesto que dicho acuerdo se hizo luego que el alimentante admitiera que devengaba ingresos adicionales a los reportados en la Planilla de Información Personal y Económica.

En virtud de los fundamentos expuestos, *se expide el auto, se modifica la resolución recurrida y se fija la pensión alimentaria en $300 según lo acordado entre las partes, la cual será efectiva a partir de la fecha en que se presentó la petición de alimentos.*

---

[3] En *López v. Rodríguez*, 121 D.P.R. 23, 32 esc. 12 (1988), señalamos lo siguiente:

"Al hacer la determinación sobre los ingresos de un alimentante también debe tomarse en consideración lo expresado en el Informe del Secretario de Hacienda sobre Reforma Contributiva de agosto de 1987, págs. 68–69, sobre la economía subterránea que prevalece en Puerto Rico:

" 'Según el estudio de Booz-Allen & Hamilton, el total del ingreso no declarado en Puerto Rico —conocido por economía subterránea— asciende a $2,500 millones al año lo que representa un 17% del ingreso bruto personal. De este total unos $1,500 millones corresponden a personas que no declaran ingreso alguno y unos $1,000 millones a personas que declaran parte pero no todo su ingreso.

" 'El estudio confirma además, que el mayor grado de evasión proviene de personas con negocios propios, seguidos por varios grupos de profesionales y, finalmente, por algunos contribuyentes asalariados.

" 'En términos relativos, la economía subterránea en Puerto Rico es dos (2) veces mayor que en los Estados Unidos, donde representa sólo el 8% del ingreso bruto nacional ...'."