ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| CARLOS ABRAHAM RIVERA APONTE<br><br>V.<br><br>EX PARTE | KLAN202201031 | *Apelación* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>KJV2001-0439<br><br>Sobre:<br>Administración Judicial |

Panel integrado por su presidenta, la Juez Ortiz Flores, la Juez Brignoni Mártir y el Juez Candelaria Rosa

Ortiz Flores, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de febrero de 2023.

Comparecen ante nosotros mediante el presente recurso de apelación, Tania Verónica Aponte Huertas (Tania Verónica) y Carlos Abraham Rivera Aponte (Carlos Abraham) (denominados en conjunto, parte apelante). Nos solicitan que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI) el 30 de junio de 2022.[1]

Adelantamos que, por los fundamentos que exponemos a continuación confirmamos el dictamen apelado.

**I**

El 9 de marzo de 2001, el Sr. Carlos Abraham Rivera Aponte radicó ante el TPI una *Solicitud de Administración Judicial*.[2] En esencia, este solicitó al Tribunal que nombrara a un administrador judicial para la distribución del caudal de Carlos Rivera Pérez (Sr. Rivera), quien falleció sin testamento. El Sr. Rivera estaba casado con Vicenta Aponte Huertas (doña Vicenta), quien falleció en el 2000 con testamento.[3] La sociedad legal de bienes gananciales compuesta por ambos no se liquidó al momento del

---

[1] Apéndice del recurso, pág. 1.
[2] Apéndice del recurso, pág. 36.
[3] Apéndice del recurso, pág. 2.

fallecimiento del Sr. Rivera, por lo que los coherederos estipularon que los bienes de ambos caudales se considerarían en una sola acción y como un solo caudal.[4] El Sr. Rivera y doña Vicenta procrearon tres hijos durante el matrimonio, Evelyn Rivera Aponte, María Isabel Rivera Aponte y Carlos Abraham Rivera Aponte.[5] A su vez, doña Vicenta tenía una hija legalmente adoptada, de nombre Tania Verónica Aponte Huertas. En su testamento, doña Vicenta instituyó a sus cuatro hijos como únicos y universales herederos en partes iguales, salvo que mejoró a sus hijos Carlos Abraham y Tania Verónica.

Posteriormente, el 17 de febrero de 1999, doña Vicenta modificó su testamento, a través de codicilos, según surge del expediente. La testadora modificó las disposiciones en cuanto a la mejora, de la siguiente forma:

> [E]l tercio (1/3) destinado mejoras lo lego totalmente a mi hija Tania y como parte del mismo, mi propiedad residencial localizada en la urbanización Encantada Apartamento 4907 Condominio Montecillo Court, Trujillo Alto Puerto Rico.
>
> [E]l tercio (1/3) de libre disposición lo lego por partes iguales a mis nietos Carlos Andres y María Alexandra.
>
> […]
>
> [D]entro del tercio (1/3) designado a mejoras incluyo además del apartamento 4907 en Montecillo Court en Encantada, un certificado de depósito del Banco Santander cuyo número es 5003520929. Por lo demás ratifico el referido testamento en todas sus partes sujeto a las modificaciones aquí hechas.

Cónsono con la petición del coheredero Carlos Abraham, el Tribunal nombró al Lcdo. Reynaldo Quiñones Márquez como el administrador judicial, comisionado y contador partidor, más dispuso en la *Orden* los honorarios para sus labores. Adicional, en la misma *Orden* el foro primario estableció que se distribuiría en igual proporción entre todos los miembros de la sucesión y que se pagaría con los fondos de esta.

Luego de varias incidencias procesales, lo cual incluyó la presentación de un *Aviso Sobre Acuerdo Transaccional*, el TPI emitió la *Sentencia Parcial* apelada. En su dictamen, el foro primario resolvió "que

---

[4] *Id.*
[5] Apéndice del recurso, pág. 45.

los honorarios del comisionado especial constituyen una deuda del caudal, por lo que procede el pago de las facturas aprobadas por [el] Tribunal antes de la adjudicación de los bienes del caudal."[6] Además, el TPI concluyó "que la coheredera Tania Aponte Huertas es heredera universal mejorada de la sucesión de Vicenta Aponte Huertas, y que, como tal, no tiene un derecho absoluto al pago de la mejora."[7] El Tribunal llegó a esta conclusión al realizar un análisis del lenguaje utilizado por la testadora. Razonó el foro primario que al leer en conjunto las disposiciones del testamento de doña Vicenta, siendo esta una persona "no profesional del Derecho, utilizó la frase 'lego' como sinónimo de la palabra 'dejo'."[8] A su vez, el TPI resolvió que los honorarios del comisionado, por ser una deuda del caudal, deberán pagarse antes de distribuir el resto de la herencia. Dichos gastos se deben pagar en igual proporción entre todos los miembros de la sucesión.

Por otro lado, el Tribunal dispuso que al no ser la mejora un derecho absoluto, la misma quedó extinguida, ya que, "los fondos del certificado de depósito fueron utilizados para pagar las deudas del caudal".[9] El Tribunal determinó que, por ser Tania Verónica heredera universal, esta responde solidariamente con los demás herederos, y que nada impide "que los coherederos, después de la partición del caudal y la conclusión del caso de epígrafe, lleguen a un acuerdo para pagarle a la coheredera la parte de la mejora extinguida."[10] En lo que respecta a la *Estipulación Transaccional* el Tribunal ordenó al Comisionado a realizar la partición de la herencia según lo ahí establecido, siempre que fuese cónsono a los resuelto en la *Sentencia Parcial*.[11]

Por no estar conforme, el 28 de julio de 2022, la Sra. Tania Verónica Aponte presentó moción titulada *Reconsideración de Sentencia Parcial*.[12] La anterior fue declarada No Ha Lugar por el TPI, mediante *Resolución*

---

[6] Apéndice del recurso, pág. 1.
[7] Apéndice del recurso, pág. 1.
[8] Apéndice del recurso, pág. 9.
[9] Apéndice del recurso, pág. 12.
[10] *Id.*
[11] Apéndice del recurso, pág. 13.
[12] Apéndice del recurso, pág. 14.

emitida el 3 de agosto de 2022, notificada el 5 del mismo mes y año.[13] Por otro lado, el coheredero Carlos Abraham radicó *Moción Solicitando la Reconsideración* en la cual requirió que el TPI reconsiderara su resolución anterior, en específico, por entender que la misma atendió asuntos nuevos.[14] No obstante, el Tribunal emitió *Resolución* el 14 de noviembre de 2022, notificada el 19 del mismo mes y año, en la cual declaró No Ha Lugar esta segunda reconsideración.[15]

Aún inconformes, los coherederos Tania Aponte y Carlos Abraham, acuden ante este Tribunal mediante el presente recurso de apelación y nos señalan la comisión de los siguientes errores:

> **Primer error**: Erró el Tribunal de Primera Instancia al determinar que Tania Aponte Huertas era solamente heredera universal y que no era legataria del legado específico del certificado de depósito de $100,000.00
>
> **Segundo error**: Erró el Tribunal de Primera Instancia al determinar que los honorarios del Administrador Judicial son una deuda del caudal y se paga antes del legado y de la adjudicación de los bienes.
>
> **Tercer error**: Erró el Tribunal de Primera Instancia al ignorar el Acuerdo Transaccional que puso fin a la controversia entre los herederos sobre el pago del legado.
>
> **Cuarto error**: erró el Tribunal de Primera Instancia al negarse a aprobar el Acuerdo de Transacción sometido por los herederos para distribuir los bienes hereditarios y poner fin a la administración judicial.

El 12 de enero de 2023 emitimos *Resolución* para conceder a la parte apelada un término para expresarse en cuanto al recurso. Con el beneficio de la comparecencia de las partes, procedemos a resolver. Acudió ante nosotros el Administrador Judicial mediante una comparecencia especial para indagar sobre la necesidad de su comparecencia. No emitimos *Resolución* a tales efectos por entender que no es necesaria dicha comparecencia para resolver el recurso.

**II**

**A**

---

[13] Apéndice del recurso, pág. 31.
[14] Apéndice del recurso, pág. 18 (Esta segunda reconsideración fue presentada el 19 de agosto de 2022.)
[15] Apéndice del recurso, pág. 32.

En nuestro derecho sucesoral se ha reconocido la figura del heredero forzoso. Estos herederos "son personas ubicadas en el ámbito de parentesco de sangre o de afinidad del causante y a quiénes éste debe instituir herederos, forzosamente, para que sea válida la institución de herederos que contenga el testamento."[16]  A esos efectos, el derogado Código Civil disponía que el testador debía garantizar una tercera parte de su herencia a sus herederos forzosos.[17] Esa participación denominada legítima, se define como "la porción de bienes de que el testador no puede disponer por haberla reservado la ley a determinados herederos, llamados por esto herederos forzosos."[18] A esa institución de herederos forzosos se le conoce también como un llamamiento a título universal.[19]

Ahora bien, garantizada la participación de los herederos forzosos en el caudal del testador, este puede disponer del restante de su patrimonio, con plena liberalidad. Es por esa razón que un testador puede designar a una persona como legatario, a título particular, sobre determinado bien o bienes, según corresponda. Cónsono con esta premisa, "[e]l testador puede disponer de sus bienes a título de herencia o de legado."[20] En la eventualidad de que surja una duda en cuanto a la calidad del llamamiento, "aunque el testador no haya usado materialmente la palabra heredero, si su voluntad está clara acerca de este concepto, valdrá la disposición como hecha a título universal o de herencia."[21]

A tales fines, se ha dicho que un legado es "una disposición testamentaria a título singular o particular a favor de determinada persona, constituyendo dicha disposición una obligación a cumplir por los herederos".[22] Conforme a lo anterior, el testador puede instituir diferentes

---

[16] J. R. Vélez Torres, *Curso de Derecho Civil*, San Juan, Rev. Jur. U.I.A., 1990, Vol. III, T. IV, pág. 231.
[17] El caso que nos ocupa se rige por las disposiciones del Código Civil de 1930, ya derogado, debido a que los derechos a la herencia de quien falleció antes de entrar en vigor del Nuevo Código Civil de Puerto Rico se rigen por la legislación anterior. Artículo 1816 del Código Civil de Puerto Rico de 2020, 31 LPRA sec. 11721.
[18] 31 LPRA sec. 2361.
[19] Vélez Torres, *op. cit*, pág. 303.
[20] 31 LPRA sec. 2122; *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 101 (2008).
[21] 31 LPRA sec. 2122.
[22] Vélez Torres, *op. cit.*

tipos de legados, ya sea de cosa específica y determinada o legado de parte alícuota, entre otros.[23]

Ahora bien, es importante precisar que existe una diferencia entre un heredero y un legatario. A esos efectos, la doctrina establece que, "[e]l heredero es un sucesor a título universal y, por lo tanto, sucesor del causante en la universalidad de las relaciones jurídicas de éste (su patrimonio); el legatario, en cambio, es sucesor a título particular y, por lo tanto, sucesor en bienes, derecho o valores patrimoniales determinados."[24] De otra parte, es importante delimitar las diferencias aludidas y en caso de duda, procede que los tribunales interpreten la última voluntad del causante.[25]

De este modo, el artículo 624 del Código Civil establece que "[t]oda disposición testamentaria deberá entenderse en el sentido literal de sus palabras, a no ser que aparezca claramente que fue otra la voluntad del testador."[26] De tal forma, "[e]n caso de duda se observará lo que parezca más conforme a la intención del testador según el tenor del mismo testamento."[27] La norma antes citada ha sido interpretada para colegir que lo que debe prevalecer es la voluntad del testador, "por lo que, la función judicial o de quien sea llamado a ejercer en materia de interpretación testamentaria consiste en descubrir esa voluntad, a fin de que se produzcan en su día los efectos que quería el autor del testamento".[28]

El Tribunal Supremo ha reconocido que la interpretación de un testamento sobre legados y derechos de los herederos forzosos se mueve entre dos campos. Uno de ellos es el criterio objetivo o germánico, bajo el cual la calificación del llamamiento depende del contenido de la disposición testamentaria. De acuerdo con este principio, el cual ha adoptado nuestro Tribunal Supremo, se entiende que, "será heredero aquel en cuyo favor se

---

[23] *Torres Martínez v. Torres Ghigliotty, supra,* pág. 102.
[24] Vélez Torres, *op. cit.*, pág. 304.
[25] *Torre Ginés v. E.L.A*, 118 DPR 436, 445 (1987).
[26] 31 LPRA sec. 2129.
[27] 31 LPRA sec. 2129.
[28] E. González Tejera, *Derecho de Sucesiones*, Ed. Universidad de Puerto Rico, San Juan, Puerto Rico, 2002, Tomo 2, cap. I; pág. 59.

dispone la universalidad, o una cuota o porción aritmética de la herencia, y será legatario, aquel que es llamado a recibir bienes específicos o determinados del caudal hereditario."[29] De otra parte, bajo la teoría subjetivista, "la clasificación del llamamiento dependerá de las palabras que haya utilizado el testador en su testamento."[30] De tal modo, "si el testador utiliza la palabra 'lego' se estará ante un legado y si emplea el término 'heredero' se tratará de un llamamiento en tal concepto."[31]

**B**

La cotitularidad sobre un patrimonio relicto, conocida como comunidad hereditaria, termina con la partición de la herencia. E. González Tejera, *Derecho Sucesorio Puertorriqueño*, Ed. Universidad de Puerto Rico, San Juan, Puerto Rico, 1983, Vol. 1, pág. 294. Mediante este acto jurídico los herederos, quienes hasta ese momento son únicamente titulares de una cuota abstracta sobre la totalidad del caudal hereditario, convierten sus participaciones indivisas en la herencia en bienes determinados o cuotas sobre bienes determinados. Puig Peña, *Tratado de Derecho Civil Español*, Ed. Revista de Derecho Privado, Madrid, 1965, Tomo V, Vol. 3, pág. 162.

La partición de la herencia está regulada esencialmente por los Artículos 1005 a 1034 del Código Civil de Puerto Rico, 31 LPRA secs. 2857-2919 y por los Artículos 600 al 605 del Código de Enjuiciamiento Civil, 32 LPRA secs. 2621-2626. Debido a la multiplicidad de intereses de los miembros de una comunidad hereditaria, su terminación está sometida a varias normas indispensables para la validez del negocio jurídico pluripersonal que culmina con la partición de la herencia. Por consiguiente, para realizar dicha partición, es menester llevar a cabo varias operaciones previas entre las cuales debemos mencionar la determinación del monto total del activo y del pasivo sucesorio, lo cual requiere un inventario de todos los activos, así como el avalúo de estos.

---

[29] *Torres Martínez v. Torres Ghigliotty, supra,* pág. 104.
[30] *Torres Martínez v. Torres Ghigliotty, supra,* pág. 105.
[31] *Id.*

Determinado el activo y pasivo, se liquida el caudal mediante el cobro de créditos y el pago de deudas.[32] Luego, se fija el haber de cada heredero siguiendo lo dispuesto en el testamento o en la declaratoria de herederos, en la proporción establecida en la ley o en el testamento y se forman hijuelas de bienes de la misma calidad y especie y de la misma igualdad, cuando la participación es igual, y se adjudican éstas a los herederos de manera que, con la aceptación de la hijuela cada heredero transforma su participación indivisa en la herencia en bienes concretos y determinados, en los cuales de ordinario, tendrá cada uno propiedad exclusiva. E. González Tejera, *Derecho Sucesorio Puertorriqueño*, Ed. Universidad de Puerto Rico, San Juan, Puerto Rico, 1983, Vol. I, págs. 293.

**C**

La figura del contrato de transacción, regulado por los artículos 1709 a 1718 del Código Civil de Puerto Rico, 31 LPRA secs. 4821-4830, se define como el pacto mediante el cual las partes, "dando, prometiendo o reteniendo cada una alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado."[33] Un contrato de transacción puede surgir a la vida jurídica tanto de forma judicial, como extrajudicial. Claro está, siempre se requerirá que cada uno los contratantes cumplan con una concesión. *Sagardía De Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 498 (2009); *Neca Mortg. Corp. v. A & W Dev. S.E.*, 137 DPR 860, 870 (1995). Los elementos constitutivos de este contrato son: "(1) la existencia de una controversia o relación jurídica incierta litigiosa; (2) la intención de las partes de sustituir—mediante la transacción—, la incertidumbre sobre los elementos objetivos de la relación jurídica por otra 'cierta e incontestable', y (3) las concesiones recíprocas." *Sagardía De Jesús v. Hosp. Aux. Mutuo*, *supra*.

---

[32] 31 LPRA sec. 2883. Véase, además, *Ruiz v. Ruiz*, 74 DPR 347, 351 (1953) ("[P]referente es el derecho de los acreedores al de los herederos, y primero es pagar que heredar. Hasta tanto no se satisfaga el total de las deudas del caudal hereditario, los herederos no tienen derecho alguno preferente a parte alguna de la herencia.")

[33] 31 LPRA sec. 4821.

La causa del contrato de transacción es la incertidumbre que le antecede a su otorgamiento, pues "[l]as partes, al transigir, podrían encontrarse en un estado de incertidumbre en torno a la razón jurídica que les asista y la ignorancia objetiva del resultado del pleito o pleito futuro," esta incertidumbre es lo que normalmente mueve a las partes a transigir. *Id.*

En cuanto a los requisitos básicos requeridos por nuestro ordenamiento jurídico a todo tipo de contrato, incluyendo los acuerdos de transacción, entiéndase, consentimiento, objeto y causa, se ha señalado lo siguiente:

> Existe el consentimiento de los contratantes, ya que tiene que ser consensual; su objeto es la controversia entre las partes —la polémica judicial o extrajudicial— pues sin ella no puede existir la transacción; y su causa consiste en la eliminación de la controversia mediante recíprocas concesiones, pues si bien tiene el propósito de desaparecer un conflicto pendiente, se diferencia de otras figuras contractuales que tienen la misma finalidad en que ello se logra mediante renuncias mutuas. *Neca Mortg. Corp. v. A & W Dev. S.E.*, *supra*, pág. 871.

Si el Tribunal acoge un acuerdo transaccional a fines de dar por terminado un litigio, lo acordado tendrá efecto de cosa juzgada entre las partes. *Rodríguez Rosado v. Zayas* Martínez, 133 DPR 406, 410 (1993). Sin embargo, si las partes deciden no incorporar el acuerdo al proceso judicial, bastará un aviso de desistimiento de la demanda para que el Tribunal conceda finalidad a las controversias entre las partes. *Neca Mortg. Corp. v. A & W Dev. S.E.*, *supra*, pág. 870. Claro está, la doctrina de cosa juzgada se refiere solo a lo que fue objeto del acuerdo, pues es sabido que "[l]a transacción no comprende sino los objetos expresamente determinados en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma."[34]

**III**

En su escrito de apelación, la parte apelante nos señala que el foro primario incidió al determinar que la coheredera, Tania Aponte Huertas, es

---
[34] 31 LPRA sec. 4826.

únicamente heredera universal y no legataria del certificado de depósito. Además, que erró el TPI al resolver que los horarios del administrador judicial son una deuda del caudal, por lo que debe pagarse antes del legado y de adjudicar el resto de los bienes de la herencia. Asimismo, la parte apelante señala que erró el TPI al ignorar el acuerdo transacción, y no aprobar el mismo.

En oposición, el coheredero Osvaldo Ortiz Medina (Sr. Ortiz), nos señala que, conforme al Artículo 804 del Código Civil de 1930, la coheredera y apelante, es quien debe sufrir la pérdida del legado del certificado de depósito por no haber reclamado el mismo cuando debía. Además, que esta consintió a que se cambiara dicho certificado y se fundiera con el resto del caudal. El Sr. Ortiz aduce que ante tal situación, la coheredera no puede pedir que se convierta "el legado de cosa específica y determinada en un legado remuneratorio" conforme el Artículo 808 del Código Civil.[35]

Primeramente, entendemos pertinente atender el asunto relativo a las etapas previas a esta apelación. Particularmente, el hecho de que hubo dos reconsideraciones posteriores a la *Sentencia Parcial* emitida por el TPI, y antes de presentarse este recurso. Lo anterior, pues, nuestro más alto foro ha resuelto en reiteradas ocasiones que los tribunales debemos ser celosos guardianes de nuestra jurisdicción, por lo que estamos obligados *motu proprio* a considerar este asunto antes de acoger o entrar en los méritos de cualquier reclamación. *García v. Hormigonera Mayagüezana*, 172 DPR 1, 7 (2007); *Romero Barceló v. ELA*, 169 DPR 460, 470 (2006). Notamos que, la primera *Moción de Reconsideración* fue resuelta por el TPI el 3 de agosto de 2022, notificado a las partes el 5 del mismo mes y año. Sin embargo, a pesar de que el foro primario declaró No Ha Lugar la reconsideración, en su *Resolución* añadió fundamentos nuevos para sustentar su dictamen previo. En específico, el Tribunal explicó que la estipulación transaccional, aparte de que no recogía todas las

---

[35] Alegato del Coheredero Osvaldo Ortiz medina, pág. 10.

controversias sobre la partición de la herencia, aún existían conflictos entre los coherederos al respecto.

Inconforme, el coheredero Carlos Abraham presentó *Reconsideración* de la resolución anterior, la cual fue declarada No Ha Lugar por el TPI mediante *Resolución* emitida el 14 de noviembre de 2022, notificada el 19 del mismo mes y año. El Tribunal aclaró el asunto en torno a la aludida *Estipulación Transaccional*, referente a las razones por las cuales no fue aprobada. Particularmente, ya que dos de los coherederos no la firmaron, aparte, que el referido acuerdo no incluyo el pago al contador partidor.[36]

Como norma general, una segunda moción de reconsideración no interrumpe el termino para apelar, cuando la misma está basada en los mismos argumentos que la primera, o cuando el dictamen del tribunal resolviendo la moción de reconsideración, no altera sustancialmente la determinación inicial. *Colón Burgos v. Marrero Rodríguez*, 201 DPR 330, 341 (2018); *Carattini v. Collazo Syst. Analysis*, 158 DPR 345, 365-366 (2003). No obstante, "'cuando la moción de reconsideración tiene el efecto de modificar o enmendar la sentencia original, por alterar sustancialmente el resultado del caso o por producir un cambio sustancial en la sentencia original, puede la parte afectada presentar una segunda moción de reconsideración siempre y cuando la misma vaya dirigida exclusivamente a los nuevos pronunciamientos de la sentencia enmendada, pues esta sentencia enmendada constituye una nueva providencia judicial distinta y separada de la original'." *Báez Figueroa v. Adm. De Corrección*, 2022 TSPR 51, que cita a José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* 1369, 2da ed., San Juan, Pubs. JTS, 2011, T. IV, pág. 1369.

Si bien el dictamen del foro primario no cambió, en su *Resolución* del 3 de agosto, el Tribunal incluyó determinaciones de hechos adicionales, de las cuales el coheredero, Carlos Abraham reconsideró. Resolvemos que, esta reconsideración cumplió con los criterios que estableció nuestro

---

[36] Apéndice del recurso, pág. 32.

Tribunal Supremo en *Carattini v. Collazo Syst. Analysis*, *supra*, ratificado en *Báez Figueroa v. Adm. De Corrección*, *supra*. Esto así, ya que la *Resolución* del TPI trajo asuntos nuevos que no fueron objeto de la *Sentencia Parcial*. En específico, en su dictamen original, el TPI nada expresó sobre el acuerdo transaccional, más allá de que el contador partidor debía repartir los fondos del caudal conforme a lo allí estipulado, siempre que fuese conforme con los pronunciamientos de la *Sentencia Parcial*. La coheredera Tania entendió que el TPI debía declarar aprobado dicho acuerdo en su solicitud de reconsideración. Sin embargo, el TPI aclaró que no procedía aprobarlo, por las razones expuestas en su *Resolución*, de la cual recurrió el coheredero Carlos Abraham. Por lo anterior, tenemos jurisdicción para atender el presente recurso en sus méritos.

De acuerdo con las determinaciones de hechos realizadas por el foro primario, las cuales merecen gran deferencia de nuestra parte, no cabe duda de que doña Vicenta realizó un llamamiento especial en el tercio de la mejora a nombre de su hija Tania Aponte, coheredera-apelante. En específico, en sus codicilos, la testadora mejoró a su hija con un apartamento y un certificado de depósito por la cantidad de $100,000. En lo que respecta al primer error, el foro primario tuvo que aplicar la normativa jurídica aplicable para interpretar la voluntad de la causante en su testamento. Véase, *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 106-107 (2008). De un análisis integral de las disposiciones testamentarias, se desprende, que en efecto la testadora tenía la intención de dejar a su hija el apartamento y el certificado de depósito, en calidad de heredera universal, tal como resolvió el TPI. No obstante, dicha mejora quedó extinguida por la inexistencia de los bienes en el caudal hereditario. Véase, E. González Tejera, *Derecho Sucesorio Puertorriqueño*, Ed. Universidad de Puerto Rico, San Juan, Puerto Rico, 1983, Vol. 2, págs. 421 y 435. No se cometió el primer error.

Asimismo, surge del expediente ante nuestra consideración que las partes presentaron un *Aviso Sobre Acuerdo Transaccional* el cual, en efecto, no fue firmado por todos los coherederos, requisito necesario para la validez de un acuerdo de transacción. Entiéndase, el consentimiento de las partes. *Neca Mortg. Corp. v. A & W Dev. S.E.*, *supra*, pág. 871. Ahora bien, en su dictamen, el foro primario ordenó al contador partidor a utilizar dicho acuerdo para realizar la partición del caudal, en lo que no fuese incompatible con la *Sentencia Parcial*. Esto así, ya que, de disponer exactamente según el acuerdo, no habría fondos suficientes para realizar el pago adeudado al contador partidor.

Cabe señalar que, al realizar las operaciones particionales y restar las deudas de la herencia, se restan los gastos de partición hechos en interés común de todos los herederos.[37] Estos gastos incluyen los servicios del contador partidor, así como las costas ocasionadas en los procedimientos de su función como tal. *Viuda de Giol v. Giol García*, 98 DPR 227, 233 (1969). Los honorarios por servicios como contador partidor, así como las costas ocasionadas en los procedimientos de su función como tal deben deducirse de la herencia como lo prescribe el Artículo 1017 del Código Civil de 1930. *Id*. Los errores señalados por la parte apelante no fueron cometidos por el Tribunal de Primera Instancia.

Por lo cual, en ausencia de error manifiesto, perjuicio o parcialidad que nos mueva a intervenir con la determinación del TPI, procede confirmar el dictamen apelado. Véase, *Pérez Cruz v. Hosp. La Concepción*, 115 DPR 721, 728 (1984). Tampoco se demostró que el foro primario erró en su apreciación de la prueba.

**IV**

Por los fundamentos que anteceden, confirmamos la *Sentencia Parcial* apelada.

**Notifíquese.**

---

[37] 31 LPRA sec. 2883.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones