Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| LUZ ALEYDA RIVERA DÁVILA<br><br>Apelante<br><br>v.<br><br>RENÉ PUPO FALCÓN<br><br>Apelado | KLCE202400604 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Ponce<br><br>Sobre: Alimentos – Menores de Edad; Custodia – Relaciones Materno/Paterno Filiales<br><br>Caso Número: PO2022RF00653 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Grana Martínez y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 27 de noviembre de 2024.

La apelante, Luz Aleyda Rivera Dávila, comparece ante nos para que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala de Ponce, notificada el 21 de diciembre de 2023. Mediante esta, el foro primario declaró *Ha Lugar* una *Solicitud de Alimentos* promovida por la apelante. En consecuencia, se le impuso al padre no custodio, René Pupo Falcón (el apelado), una pensión alimentaria final de $653.83 mensual, más el 50.36% de los gastos escolares razonables, y médicos de las menores involucradas.

Por los fundamentos que expondremos a continuación, se modifica la *Sentencia* apelada y, así, la misma se confirma.

### I

Durante la vigencia de su relación, las partes de epígrafe procrearon dos (2) hijas, ambas menores de edad. Tras su separación, el 2 de agosto de 2022, la apelante radicó una *Petición de Custodia y Alimentos* contra el apelado. En esta, indicó que poseía la custodia provisional de sus hijas, luego de expedirse una

Número Identificador

SEN2024 _____

orden de protección contra el apelado. Así, solicitó la custodia monoparental permanente de sus hijas y la fijación de una pensión alimenticia a favor de estas, así como una suma en concepto de honorarios de abogado.

Ese mismo día, 2 de agosto de 2022, el apelante radicó un escrito titulado *Petición Sobre Relaciones Filiales y Pensión Alimentaria*, en el que solicitó se estableciera una estructura de relaciones paternofiliales y una pensión alimentaria para beneficio de sus hijas menores de edad. El 18 de agosto de 2022, se llevó a cabo la vista para establecer la pensión alimentaria provisional. Conforme surge, durante la misma se estipuló que el apelado, como padre no custodio, pagaría una pensión alimentaria provisional de $729.00 mensuales, más el 55% de los gastos del regreso a la escuela, gastos médicos no cubiertos por el plan y gastos extraordinarios de las menores.[1]

Las partes dieron curso a múltiples trámites, particularmente relacionados a la etapa del descubrimiento de prueba. En lo aquí pertinente, el apelado, como padre no custodio, hizo entrega de la Planilla de Información Personal y Económica (PIPE), información financiera e información de su antiguo empleador, la compañía Medtronic. Más tarde, se descubrió que, el 5 de mayo de 2023, el apelado renunció a Medtronic para dedicarse al manejo de una empresa que incorporó. Toda vez ello, se pautó la celebración de la vista para establecer la pensión alimentaria final.

El 29 de junio de 2023, se celebró la vista para establecer la pensión alimentaria final de las menores. Durante la misma, se determinó que el gasto por concepto de vivienda de las menores, ascendía a un total de $439.85 mensuales de hipoteca, y que los gastos escolares de las niñas totalizaban la suma de $1,100.00

---

[1] Apéndice Recurso de Apelación, págs. 12-13.

anuales.[2] También, se determinó que, luego de renunciar a su antiguo patrono, el apelado se dedicó, a tiempo completo, a prestar servicios de reparación y mantenimiento de aires acondicionados a través de una compañía de su propiedad.[3]

El 15 de diciembre de 2023, la Examinadora de Pensiones Alimentarias, radicó el *Acta Informe de la Vista*. Surge que, para establecer el cómputo del ingreso bruto del apelado, se consideró la información consignada en la PIPE, los talonarios de empleo, evidencia de renta por dos (2) apartamentos de su propiedad, salario por servicios profesionales, el formulario W-2, dos (2) cuentas de banco y tres (3) cuentas de cooperativa a su nombre y de su empresa. Por su parte, para la determinación del ingreso neto, la Examinadora contempló los depósitos en las cuentas bancarias y el salario devengado en Medtronic por la suma estipulada de $13,892.54 anuales. Igualmente, se determinó el salario devengado por sus funciones en la corporación a raíz de $275.00 semanal, e ingresos por servicios prestados por la cantidad de $4,766.66 ese año. A su vez, se tomó en cuenta el total neto de rentas por los apartamentos para el año 2022, por la suma de $2,916.60. De este modo, se le imputó un ingreso neto total de $21,575.78 anual para el año 2022.

Mediante *Resolución*, notificada el 21 de diciembre de 2023, el tribunal adoptó el *Acta-Informe* de la Examinadora. Así, acogió la recomendación de imponer al apelado una pensión alimenticia final de $653.83 mensuales, a pagarse a razón de $326.92 quincenal. Adicional, se le impuso el pago de 50.36% de los gastos escolares razonables y gastos médicos no cubiertos por el plan médico de las menores.

---

[2] Véase, Transcripción de la Vista para establecer Pensión Alimenticia final del 29 de junio de 2022, págs. 6-10.
[3] *Íd.*

El 8 de enero de 2024, la parte apelante presentó *Moción en Solicitud de Reconsideración*. En el referido escrito, planteó que la pensión alimentaria impuesta, no estaba acorde a la realidad económica del apelado, ni con las guías mandatorias para fijar alimentos. Arguyó, que los cómputos sobre los depósitos bancarios eran distintos a los resueltos por la Examinadora. Además, expuso que debió imputársele la cantidad de $13,912.00 como salario de Medtronic, $9,300.00 ($775.00 mensual por doce (12) meses) por la renta de los apartamentos, $9,533.28 en ingreso de la corporación y $46,915.81 en depósitos de las cinco cuentas combinadas, para una suma total de, a su juicio, $75,161.50. Finalmente, la parte apelante solicitó nuevamente la imposición de honorarios de abogado.

El apelado, por su parte, presentó escrito titulado *Moción en Cumplimiento de Orden y en Oposición a Reconsideración*, en la cual indicó que muchos de los depósitos realizados en sus cuentas, fueron transferencias entre estas, por lo que, considerar solo los depósitos, tendría el efecto de triplicarlos. A su vez, sostuvo que la apelante pretendía que se le imputaran los ingresos de la Corporación y no el sueldo que devengó de esta. Así también, alegó que, contrario a lo aducido, los ingresos imputados por las rentas de sus apartamentos eran correctos, toda vez que se descontó como gasto el pago de la hipoteca. Por último, argumentó que la solicitud de honorarios de abogado por $1,500.00, era una excesiva.

El 3 de abril de 2024, la apelante radicó *Moción de Relevo de Sentencia*. En la misma, arguyó que la corporación del apelado se disolvió el 5 de marzo de 2023, luego de adjudicada la pensión en controversia, todo, a su juicio, con la intención de defraudar. Añadió, que el apelado trabajó por cuenta propia por más de siete (7) años, y que creó la Corporación cuando se separaron, solo para que le fueran computados ingresos menores a los devengados.

Igualmente, adujo que, una vez estipulada la pensión, el apelante disolvió la Corporación, hecho que, a su juicio, apoyaba sus alegaciones de fraude. Así, solicitó que se decretara el relevo de la sentencia, todo al amparo de la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V. R.49.2.

El 25 de abril de 2024, el foro primario emitió *Resolución* declarando *No Ha Lugar* la *Moción en Solicitud de Reconsideración y la Moción de Relevo de Sentencia*, radicadas por la apelante. Dicha *Resolución* fue notificada el 30 de abril de 2024.

Inconforme, el 30 de mayo de 2024, la apelante compareció ante nos, mediante el recurso de epígrafe, el cual, conforme a las normas procesales aplicables, acogimos como uno de apelación. En el mismo, planteó los siguientes señalamientos de error:

> Primero: Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Ponce, al no considerar los depósitos en las cuentas bancarias demostrando que el alimentante mantenía una economía subterránea, la cual debió considerarse en el cálculo de pensión alimentaria según la jurisprudencia vigente.
>
> Segundo: Erró el Honorable Tribunal De Primera Instancia, Sala Superior de Ponce, al no reconocer que el alimentante redujo su capacidad de generar ingresos para que la cuantía de pensión alimentaria fuese menor a su realidad económica.
>
> Tercero: Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Ponce, al no conceder honorarios de abogado a la parte Peticionaria en contravención a la ley y jurisprudencia interpretativa.
>
> Cuarto: Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Ponce, al no conceder el Relevo de Sentencia solicitado, por la Disolución de la Corporación del alimentante el 5 de marzo de 2024, demostrando que la creación de ésta fue un subterfugio.

**II**

Es sabido que los casos relacionados con alimentos de menores están revestidos del más alto interés público. *James Soto v. Montes James*, 2024 TSPR 27, 213 DPR ____ (2024); *Umpierre Matos v. Juelle Mejías*, 203 DPR 254, 265 (2019). El derecho de un menor a reclamar alimentos tiene sus fundamentos en el derecho a

la vida configurado como un derecho de la personalidad, con profundas raíces constitucionales. El Tribunal Supremo de Puerto Rico ha señalado que los menores tienen un derecho fundamental a reclamar alimentos y que, en éstos, el interés no puede ser otro que el bienestar del menor. *James Soto v. Montes James*, supra; *Díaz Rodríguez v. García Neris*, 208 DPR 706, 717 (2022); *Toro Sotomayor v. Colón Cruz*, 176 DPR 528, 535 (2009); *Argüello v. Argüello*, 155 DPR 62, 69-70 (2001). Los alimentos incluyen todo lo que sea indispensable para el sustento, habitación, vestido, asistencia médica y educación e instrucción del alimentista. Véase, Art. 653 del Código Civil de Puerto Rico de 2020 (Código Civil 2020), 31 LPRA sec. 7531.

Ciertamente, la obligación del sustento de los hijos menores recae en ambos padres. Sin embargo, una vez roto el vínculo matrimonial, se reparte entre éstos el pago de la pensión alimentaria en cantidad proporcionada a su caudal respectivo. Artículo 590 Código Civil 2020, 31 LPRA sec. 7241; *Díaz Rodríguez v. García Neris*, supra, pág. 718; *Toro Sotomayor v. Colón Cruz*, supra, pág. 535. Por ello, la cuantía de los alimentos es proporcional a los recursos del alimentante y las necesidades del alimentista y se reduce o aumenta en esta proporción. Artículo 671 Código Civil 2020, 31 LPRA sec. 7567.

Para la determinación de la capacidad económica del alimentante, es decir, sus ingresos, a los fines de fijar la pensión alimentaria en beneficio de los menores, se toman en cuenta todos los ingresos devengados por éste, independientemente que hayan sido informados o no en la Planilla de Información Personal y Económica (PIPE). *Franco Resto v. Rivera Aponte*, 187 DPR 137, 151 (2012); *Rodríguez Rosado v. Zayas Martínez*, 133 DPR 406, 412 (1993). Además, se toman en consideración el historial de trabajo y los ingresos devengados anteriormente, su profesión, su

preparación académica, el estilo de vida y capacidad del alimentante para generar ingresos; la naturaleza y cantidad de las propiedades con las que cuenta; así como la naturaleza de su empleo o profesión y sus otras fuentes de ingresos. Véase Artículo 12 del Reglamento Núm. 8529 de 30 de octubre de 2014, *Guías Mandatorias para Computar las Pensiones Alimentarias en Puerto Rico.*[4] *Rodríguez Rosado v. Zayas Martínez*, supra, pág. 412; *Franco Resto v. Rivera Aponte*, supra, pág. 151.

La labor de determinar los ingresos del alimentante es sumamente importante.  Ello, debido a la trascendencia del deber de los padres para alimentar a sus hijos.  Por tanto, los tribunales deben escudriñar la prueba que tienen ante sí, de manera tal que se pueda determinar la verdadera situación económica del alimentante y éste no pueda evadir su responsabilidad alimentaria. *Argüello v. Argüello*, supra, a las págs. 72-75.  A estos efectos, los tribunales no están limitados a considerar sólo la evidencia testifical o documental sobre los ingresos del alimentante, sino que éstos tienen la facultad de inferir, incluso a base de prueba circunstancial, que el alimentante cuenta con medios suficientes para satisfacer la pensión alimentaria que se le imponga. *Quiles Pérez v. Cardona Rosa,* 171 DPR 443, 456-457 (2007).

Ante esta determinación de ingresos, es decir, de la capacidad económica del alimentante, efectuada por el *Foro* de instancia, aplica la norma de que los tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no debemos intervenir con las determinaciones de hecho, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia.  Este Tribunal no puede descartar y sustituir el criterio del *Foro* de instancia para imponer nuestra apreciación de los

---

[4] Hicimos referencia al Reglamento 8529, por ser el vigente al momento de los hechos.

hechos. *Weber Carrillo v. ELA et al.,* 190 DPR 688, 724 (2014); *González Hernández v. González Hernández,* 181 DPR 746, 776-777 (2011); *Quiles Pérez v. Cardona Rosa*, supra.

**B**

La Ley Núm. 5 del 30 de diciembre de 1986, conocida como la Ley Orgánica de Administración para el Sustento de Menores (ASUME), establece en su Artículo 22(1), 8 LPRA sec. 521, que "[e]n cualquier procedimiento bajo este capítulo para la fijación, modificación o para hacer efectiva una orden de pensión alimentaria, el tribunal, o el Juez Administrativo **deberá imponer al alimentante el pago de honorarios de abogado a favor del alimentista cuando éste prevalezca"**. La imposición de los honorarios de abogado a favor de los menores, en una acción para reclamar alimentos a favor de éstos, procede sin la necesidad de que el demandado incurra en temeridad, pues esta partida es parte de los alimentos a los que tiene derecho el menor alimentista. *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1035 (2010). La fijación de la cuantía de honorarios bajo esta Ley se regirá por el mismo criterio de razonabilidad que aplican nuestros tribunales para fijar honorarios. *Íd.*

**C**

Por su parte, en ocasión a que una parte estime que, incorrectamente, se ha emitido una sentencia en su contra que ya es final y firme, esta puede solicitar que se decrete su nulidad, ello en un pleito independiente, o que se suprima su oponibilidad, en la misma causa de acción, al amparo de lo establecido en la Regla 49.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 49.2. Dicha disposición establece el mecanismo procesal disponible para solicitar al foro de instancia el relevo de los efectos de una sentencia, orden o procedimiento, por las razones siguientes:

(a) un error, inadvertencia, sorpresa o negligencia excusable;

(b) descubrimiento de evidencia esencial que no pudo haber sido descubierta a tiempo para solicitar un nuevo juicio;

(c) fraude, falsa representación u otra conducta impropia de una parte adversa;

(d) nulidad de sentencia;

(e) la sentencia ha sido satisfecha, renunciada o se ha cumplido con ella, o la sentencia anterior en que se fundaba ha sido revocada o de otro modo dejada sin efecto, o no sería equitativo que la sentencia continuara en vigor, o

(f) cualquier otra razón que justifique la concesión de un remedio contra los efectos de una sentencia.

La norma estatuida en la Regla 49.2 de las de Procedimiento Civil, *supra*, tiene como fin establecer el justo balance entre dos principios de cardinal importancia en nuestro ordenamiento jurídico. Por un lado, se protege el interés de que los casos se resuelvan en los méritos haciendo justicia sustancial, y por el otro, el que los litigios lleguen a su finalidad. *HRS Erase v.* CMT, 205 DPR 689, 698 (2020). Por tanto, para que proceda el relevo de sentencia, según la referida Regla, es necesario que el peticionario aduzca, al menos, una de las razones enumeradas a tal fin. *Pérez Ríos et al. v. CPE,* 2023 TSPR 136, 213 DPR ____ (2023); *García Colón et al. v. Sucn. González,* 178 DPR 527, 540 (2010).

La norma estatuida en la Regla 49.2 de las de Procedimiento Civil, *supra*, tiene como fin establecer el justo balance entre dos principios de cardinal importancia en nuestro ordenamiento jurídico. Por un lado, se protege el interés de que los casos se resuelvan en los méritos haciendo justicia sustancial, y por el otro, el que los litigios lleguen a su finalidad. Para que proceda el relevo de sentencia según la referida Regla, es necesario que el peticionario aduzca, al menos, una de las razones enumeradas a tal fin. El fraude no se presume, por lo que meras alegaciones sin fundamento fáctico, no constituyen una de las circunstancias que

permiten el relevo de una sentencia. *González v. Quintana,* 145 DPR 463, 471 (1998); *Pardo v. Sucn. Stella,* 145 DPR 816, 825 (1998).

En lo pertinente, el Tribunal Supremo de Puerto Rico ha sido enfático en que una acción de este tipo en que se alega fraude al tribunal, sólo puede ser considerada si incluye actuaciones cuyo efecto o intención sea mancillar al tribunal como tal, o que es perpetuado por oficiales del tribunal, de tal forma que la maquinaria judicial no pueda ejercer como de costumbre su imparcial labor de juzgar los casos que se le presentan para adjudicación. *Pardo v Sucn. Stella,* supra, págs. 824-825. Las alegaciones falsas que se hayan incluido en el proceso judicial *per se* no constituyen fundamentos para concluir que hubo fraude al tribunal que justifique el relevo de sentencia. *Íd.* Es decir que, como elemento esencial, se debe probar con certeza razonable, por preponderancia de la prueba, la intención de defraudar o mancillar al tribunal. *Íd.*

### III

En la presente causa, la apelante plantea que el Tribunal de Primera Instancia erró al no considerar en el cálculo de la pensión alimentaria en controversia, ciertos depósitos, efectuados en las cuentas bancarias del apelado, bajo la alegación de que éste mantenía una economía subterránea que debía ser revelada. De igual forma, la apelante aduce que el tribunal, de hecho, incidió al no reconocer que el alimentante voluntariamente redujo su capacidad de generar ingresos para evadir su responsabilidad económica respecto a las menores. Habiendo examinado los referidos señalamientos a la luz de los hechos establecidos y el derecho aplicable, confirmamos la determinación apelada.

Un examen del expediente que nos ocupa nos permite concluir que la determinación apelada está sostenida en la norma. A nuestro juicio, el Juzgador de instancia, al acoger el informe emitido por la

Examinadora, no se apartó de los límites impuestos a su labor adjudicativa. En su primer señalamiento, la apelante pretende que proveamos para lo que, en efecto, constituye una duplicidad en la consideración de los ingresos del apelado. Según los documentos sometidos a nuestra consideración y, tal cual plantea el apelado, los depósitos en controversia responden a una misma masa de dinero transferida entre varias cuentas. Tanto la Examinadora, como el Tribunal de Primera Instancia, consideraron la totalidad de las referidas partidas, todo a los efectos de calcular la pensión alimentaria en controversia. El hecho de que la suma total de las mismas haya sido fraccionada en distintas cuentas, no incide sobre la consideración general de las mismas. Disponer lo contrario equivaldría a duplicar los totales en cuestión, siendo ello un ingreso irreal, del cual, claramente, no podría derivarse beneficio alguno sujeto a ley. Además, nada en el expediente acredita la recurrencia de depósitos adicionales en las cuentas del apelado, que deban ser consideradas como parte de su ingreso neto.

Situación similar ocurre con el dinero perteneciente a la corporación y el ingreso bruto en rentas. El análisis más prudente sugiere al Juzgador separar los gastos necesarios para el funcionamiento de la persona jurídica de los ingresos realmente devengados por concepto de salarios de su administrador como persona natural. En ese sentido, hace bien el foro primario al adjudicarle, para propósitos de fijación de ingreso neto, la cantidad que el apelado, en su carácter personal, recibe como salario.

Por su parte, sobre el dinero proveniente de las rentas, a la suma se le debe restar el gasto de hipoteca por la cantidad de $531.95, pagaderos a Sun Mortgage Company, Inc.[5]

---

[5] Transcripción de la vista, pág. 26.

Por otro lado, en cuanto a la alegación sobre la falta de reconocimiento por el Tribunal de Primera Instancia, de que el apelado voluntariamente redujo su capacidad de generar ingresos, tampoco le asiste la razón a la parte apelante. El *Acta-Informe* emitido por la Examinadora demuestra una consistencia en los ingresos del apelado, a saber, en el año 2020 se determinó un ingreso neto en $24,124.19; para el año 2021 en $20,812.16; y, finalmente, para el año 2022 se determinó un ingreso de $21,575.78. Así pues, de los números antes descritos no se puede concluir que hubo tal reducción en la capacidad para generar ingresos con intención de evadir su responsabilidad alimenticia.

De otro lado, la parte apelante alega que el foro primario incurrió en error al no conceder la partida de honorarios de abogado establecida por ley, para casos como el de autos. Le asiste la razón. Sabido es que la imposición de los honorarios de abogado en una acción para reclamar alimentos de menores, procede sin la necesidad de que el demandado incurra en temeridad. Tal cual indicáramos anteriormente, la Ley Núm. 5, *supra*, establece que, una vez el alimentista prevalezca en una acción para la fijación de alimentos, corresponde al Tribunal imponerle el pago por concepto de honorarios al alimentante, tal es la ocasión en el caso de autos. Así, modificamos el dictamen del que se recurre a los únicos efectos de resolver que, tal cual plantea la apelante, procede la imposición de una cuantía por conceptos de honorarios de abogado a ser satisfecha por el apelado.

Finalmente, es la contención de la apelante que el tribunal primario debió haber decretado el relevo de la sentencia apelada, a tenor con las disposiciones de la Regla 49.2 de Procedimiento Civil, *supra*. Específicamente, argumenta que el apelado disolvió su corporación luego de emitido el dictamen que nos ocupa, lo que aduce demuestra que, la creación de la misma, luego de su

separación, obedeció a la clara intención de defraudar al tribunal para que le fuera impuesta una obligación alimentaria menor. Sin embargo, estamos impedidos de coincidir con su raciocinio. La apelante incumplió con los criterios procesales para obtener un relevo de sentencia al amparo de la doctrina aplicable a la causal que invoca. Esta adujo que la actuación del apelante, al crear y disolver la corporación en controversia, fue una fraudulenta. Sin embargo, nada en la prueba sostiene la procedencia de sus alegaciones. Tal cual expresado previamente, el estado de derecho reconoce que, a los fines de relevar a una parte de los efectos de una sentencia, el fraude no se presume, por lo que corresponde a quien lo alega, presentar la evidencia necesaria para establecer su concurrencia. Tal no es el caso en la presente causa. La apelante no demostró que la intención del apelante fue, a través de su corporación, evadir su responsabilidad frente a las menores alimentistas. Siendo ello así, procede no intervenir con la discreción del foro primario al denegar el relevo de sentencia.

En mérito a lo antes expuesto, sostenemos lo resuelto en el dictamen solicitado, con la salvedad de que se acoge la petición de la apelante, ello en cuanto a la imposición de una partida por concepto de honorarios de abogado. Por lo demás, el criterio judicial empleado es cónsono con el derecho aplicable y los hechos establecidos.

**IV**

Por los fundamentos que anteceden, se modifica la *Resolución* apelada y, así modificada, confirmamos la misma. Devolvemos el caso de epígrafe al tribunal primario a los efectos de que, conforme a lo aquí resuelto, se imponga la partida aplicable por concepto de honorarios de abogado.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones