ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| JOSÉ ALVARADO VEGA; AGUSTÍN CRIOLLO OQUERO; DENNIS CHAPARRO COLÓN; MARIÁ MIRANDA SIERRA; EFRÉN RODRÍGUEZ MARTÍNEZ; EMPLEADOS 6-50<br><br>Parte Recurrida<br><br>v.<br><br>GRUPO LMH, LLC; LATIN MEDIA HOUSE, LLC; FF ONE LLC; FERRER FAASS & CO., LLC; DRSI CALL CENTER, LLC; DISTRIBUTION INTEGRATED SERVICES, LLC; POLEN, LLC; MIGUEL A. FERRER; HEIKO FAASS; Y OTROS<br><br>Parte Peticionaria | KLCE202300958 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2022CV06895<br><br>Sobre: Salarios Acción Representativa (Procedimiento Sumario Laboral) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de noviembre de 2023.

Comparece la parte peticionaria, Grupo LMH, LLC; Latin Media House, LLC; FF ONE LLC; Ferrer Faass & Co., LLC; DRSI Call Center, LLC; Distribution Integrated Services, LLC; Polen, LLC; Miguel A. Ferrer y Heiko Faass (en adelante querellados o peticionarios) y solicitan la revisión y revocación de tres determinaciones del TPI, notificadas el 21, 25 y 28 de agosto de 2023, respectivamente. Las referidas determinaciones, corresponden a cuatro solicitudes que fueron declaradas No Ha Lugar, por el foro primario.[1] En consecuencia el foro apelado

---

[1] Moción de Reconsideración, véase Índice del Apéndice págs. 151-153, Solicitud de Reconsideración y Relevo, véase Índice del Apéndice págs. 160-161; Moción Informativa Urgente, véase Índice del Apéndice págs. 165-166, Solicitud de

mantuvo en vigor la Orden de Embargo y Ejecución de Sentencia del 19 de agosto de 2023 y notificada el 21 de agosto de 2023[2]. Junto con el *certiorari,* los peticionarios presentaron una petición de paralización de los procedimientos en auxilio de jurisdicción. Así las cosas, el 1 de septiembre de 2023, ordenamos la paralización de los procedimientos en el TPI, incluyendo la orden de ejecución de sentencia y embargo.

El 14 de septiembre de 2023, los querellantes comparecieron mediante *Alegato en Oposición a las Peticiones de Certiorari.*

Evaluados los argumentos de las partes comparecientes y los documentos que conforman el apéndice del recurso, resolvemos expedir el auto de *certiorari* y **revocar** la Orden de Ejecución de Sentencia y Embargo y devolver al foro primario para la continuación de los procedimientos.

I.

El 2 de agosto de 2022 los Sres. José Alvarado Vega, Agustín Criollo Oquero, Dennis Chaparro Colón, Efrén Rodríguez Martínez y la Sra. María Miranda Sierra, aquí recurridos, presentaron una querella contra los peticionarios al amparo del procedimiento sumario que establece la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3118. A grandes rasgos los recurridos reclamaban salarios y beneficios marginales.

Luego de varios tramites procesales innecesarios pormenorizar, el **1 de mayo de 2023** se celebró una vista transaccional. En la vista se informó que las partes habían llegado a un acuerdo privado. Así informado, el TPI procedió a dictar ese mismo día, la correspondiente Sentencia.

---

Reconsideración y Relevo de la NHL Solicitud de Relevo de Orden y la Orden de Ejecución de Sentencia, véase Índice del Apéndice págs. 171-173

[2] Dicho embargo fue dirigido a Grupo LMH, LLC; Latin Media House, LLC; FF ONE LLC; Ferrer Faass & Co., LLC; DRSI Call Center, LLC; Distribution Integrated Services, LLC; Polen, LLC; Miguel A. Ferrer y Heiko Faass, por la cantidad de $69,643.02 más $1,500.00 de honorarios de abogados.

Como parte de los procedimientos, durante la vista transaccional se levantó una Minuta[3], la cual lee:

> Mediante **videoconferencia[4]** se llamó el caso de epígrafe para vista **Transaccional.** Participó el **Lcdo. Rafael A. Ortiz Mendoza** en representación de la parte querellante. **Lcdo. Jaime L. Sanabria Montañez** en representación de la parte querellada.
>
> Iniciados los procedimientos, el licenciado Sanabria informó que remitió a la parte querellante una oferta transaccional la cual estuvo de acuerdo. También, la parte demandante (sic) le solicitó ciertos documentos para lograr finiquitar este asunto. El pago por transacción informado se hará entre el 15 y 30 de mayo de 2023.
>
> A solicitud del licenciado Ortiz, los abogados se acercaron al estrado. Luego de dialogar en el estrado, se decretó un breve receso para que los abogados hicieran algunas diligencias.
>
> Reanudada la sesión, el licenciado Sanabria anunció que las partes lograron acuerdos privados. En o antes del 23 de mayo de 2023 estarán realizando los pagos que correspondan.
>
> Bajo juramento, Max Carranza, José Alvarado Vega, María Miranda Sierra, Dennis Chaparro Colón, Efrén Rodríguez Martínez y Agustín Criollo Oquero ratificaron el acuerdo privado alcanzado.
>
> **El Tribunal acoge la transacción entre las partes y dictará sentencia por estipulación. Se deja sin efecto la vista pautada para el 24 de mayo de 2023.**
>
> (Énfasis en el original).

Por su parte, la *Sentencia* dictada el 1 de mayo de 2023, dispuso:

> Celebrada la Vista Transaccional hoy, comparecieron los querellantes José Alvarado Vega; Agustín Criollo Oquero; Dennis Chaparro Colón; Efrén Rodríguez Martínez y María Miranda Sierra representados por el Lcdo. Rafael A. Ortiz Mendoza. En representación de la parte querellada compareció el Sr. Max Carranza y el Lcdo. Jaime L. Sanabria Montañez.
>
> Las partes han informado haber llegado a un acuerdo privado que pone fin a las controversias en el presente caso.

---

[3] La minuta fue transcrita el 18 de mayo de 2023.
[4] Se aclara que la vista transaccional se celebró de forma presencial.

> La parte querellada por conducto del Sr. Max Carranza y las partes querellantes José Alvarado Vega; Agustín Criollo Oquero; Dennis Chaparro Colón; Efrén Rodríguez Martínez y María Miranda Sierra, bajo juramento ratificaron el acuerdo de forma libre y voluntaria.
>
> Ante ello, el Tribunal aprueba la estipulación en sus precisos términos y condiciones. Las partes del caso de autos se atendrán al estricto cumplimiento de lo estipulado y de esta Sentencia.
>
> Se apercibe a las partes que el incumplimiento de las obligaciones acordadas dará lugar a las medidas y procedimientos, también acordados, para el caso de incumplimiento de lo pactado; más cualquier otra medida o sanción que el Tribunal pueda entender apropiada conforme el incumplimiento, circunstancias y derecho aplicable.
>
> Esta Sentencia se dicta sin especial imposición de costas, gastos ni honorarios de abogados, excepto aquellas que se hayan pactado entre las partes en el acuerdo privado de transacción.
>
> **Se deja sin efecto el Juicio en su Fondo señalado para el 24 de mayo de 2023.** (Énfasis en el original).

Así las cosas, el 19 de julio de 2023, lo querellantes solicitaron al TPI que se señalara una vista y emitiera una orden para que los querellados mostraran causa por las cuales no se debía ejecutar la *Sentencia* del 1 de mayo de 2023. En la solicitud, los querellantes alegaron que los querellados no habían realizado el pago acordado en o antes del 23 de mayo de 2023[5].

El 24 de julio de 2023, el TPI emitió una orden a los querellados para que mostraran causas por las cuales no se debía ordenar la ejecución de la *Sentencia*. El mismo día, los querellados comparecieron mediante *Moción Aclaratoria* indicando que los acuerdos privados **incluían** que los querellantes renunciasen y/o desistieran de **cualquier tipo** de reclamación, causa de acción, demanda y/o acciones legales. Ante esa contraprestación incluida

---

[5] En dicho escrito es que se mencionan por primera vez cantidades de dinero para cada querellante. Las cantidades totalizan $69,643.02.

en el acuerdo privado, los querellados informaron que estaban en espera que los querellantes desistieran de una querella que había presentado ante la Junta Nacional de Relaciones del Trabajo.

Ante los nuevos detalles del contenido del acuerdo privado y las versiones irreconciliables de las partes, el 31 de julio de 2023, el TPI les ordenó que se tenían que reunir (vía telefónica o videoconferencia) para discutir el asunto e informar en cinco (5) días. El foro primario concluyó su orden indicando, "De no lograr solucionar la controversia, el Tribunal intervendrá".

Así las cosas y lejos de llegar a un entendido, las partes comenzaron a presentar mociones y réplicas teorizando lo que cada uno de ellos entendía era el contenido y las condiciones del acuerdo privado, según discutido fuera del Tribunal y durante la vista del 1 de mayo de 2023.

Evaluados los escritos, el 10 de agosto de 2023, el TPI mediante orden, le solicitó a los querellantes un proyecto de ejecución de sentencia y mandamiento. El 19 de agosto de 2023, el TPI concedió la Orden de Ejecución de Sentencia en virtud de la Regla 51 de las de Procedimiento Civil. La anterior concesión, estaba basada en la *Solicitud de Señalamiento de Vista y Orden de Mostrar Causa Por La cual No Se Deba Ejecutar La Sentencia e Imponer Sanciones,* la Sentencia dictada el 1 de mayo de 2023 y las réplicas de las partes. Dicha orden de ejecución y embargo era por la cantidad de $69,643.02, más $1,500.00 por honorario de abogados, más las costas y gastos del proceso.

El 23 de agosto de 2023, los peticionarios presentaron una *Solicitud de Reconsideración y Relevo.* En síntesis, argumentaron que el acuerdo privado alcanzado era solamente entre Latin Media House, LLC. y los querellantes. Ante la petición de reconsideración, el 23 de agosto de 2023 el TPI le ordenó a los querellantes que replicaran la solicitud de reconsideración y relevo en cinco (5) días.

En espera de la réplica a la solicitud de reconsideración y relevo, Latin Media House LLC, le solicitó al TPI que paralizara la ejecución y embargo autorizada desde el 19 de agosto de 2023. En su escrito, Latin Media House, LLC. mencionó que los querellantes no habían desistido o renunciado a todos los casos contra ello, a pesar de haberlo acordado mediante el acuerdo privado.

El 24 de agosto de 2023, los querellantes replicaron y se opusieron a la solicitud de reconsideración y relevo. Luego de réplicas y dúplicas adicionales, el 25 de agosto de 2023, el TPI declaró *No Ha Lugar, a la Solicitud de Reconsideración y Relevo de la "NHL Solicitud de Relevo de Orden" y La "Orden De Ejecución De Sentencia"* presentada por los querellados.

Inconformes los querellados, el 31 de agosto de 2023, acuden ante nosotros mediante *certiorari* y le imputan al foro primario el siguiente error:

> ERRÓ EL TPI AL DENEGAR LA MOCIÓN DE RECONSIDERACIÓN, SOLICITUD DE RECONSIDERACIÓN Y RELEVO, MOCIÓN INFORMATIVA URGENTE, Y LA SOLICITUD DE RECONSIDERACIÓN Y RELEVO DE LA "NHL SOLICITUD DE RELEVO DE ORDEN" Y LA "ORDEN DE EJECUCIÓN DE SENTENCIA" PRESENTADAS POR LA PARTE PETICIONARIA AL HABERSE EMITIDO UNA EJECUCIÓN DE SENTENCIA Y ORDEN DE EMBARGO EN CONTRA DE OCHO (8) COPETICIONARIOS QUE NUNCA FUERON PATRONO DE LA RECURRIDA.

La parte recurrida compareció mediante *Alegato en Oposición a las Peticiones de Certiorari* el 14 de septiembre de 2023.

## II.

### A.

El auto de *certiorari* es el vehículo procesal que permite a un Tribunal de mayor jerarquía revisar las determinaciones interlocutorias realizadas por un foro inferior. La expedición del auto descansa en la sana discreción del Tribunal. *Caribbean Orthopedics*

*v. Medshape et al.,* 207 DPR 994, 1004 (2021); *800 Ponce De León v. AIG,* 205 DPR 163, 174 (2020).

En los casos civiles, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, delimita las instancias en las que procede que este Tribunal de Apelaciones expida el recurso de *certiorari. Caribbean Orthopedics v. Medshape et al., supra.*; *Scotiabank v. ZAF Corp.,* 202 DPR 478, 486 (2019). La citada Regla establece que el recurso sólo se expedirá cuando se recurra de una orden o resolución bajo remedios provisionales de la Regla 56, injunctions de la Regla 57, o de la denegatoria de una moción de carácter dispositivo. Por excepción, y en el ejercicio discrecional del foro apelativo, se podrá expedir el recurso cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, casos de relaciones de familia, casos revestidos de interés público o cualquier otra situación, en la que esperar por una apelación constituiría un fracaso irremediable de la justicia. Íd.

Según lo dispuesto en la Regla 52.1, supra, al denegar la expedición de un recurso de *certiorari*, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Ahora bien, aun cuando un asunto esté comprendido dentro de las materias que podemos revisar de conformidad con la Regla 52.1, supra, para poder ejercer debidamente nuestra facultad revisora es menester evaluar si, a la luz de los criterios enumerados en la Regla 40 de nuestro Reglamento, se justifica nuestra intervención. Estos criterios son:

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. Íd.

Ello impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Por tanto, de no estar presente ninguno de los criterios esbozados, procede abstenernos de expedir el auto solicitado.

**B.**

El procedimiento de ejecución de sentencia está regulado por la Regla 51.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 51.1, que dispone lo siguiente:

La parte a cuyo favor se dicte sentencia podrá ejecutarla mediante el procedimiento fijado en esta Regla 51, en cualquier tiempo dentro de cinco (5) años de ésta ser firme. Expirado dicho término, la sentencia podrá ejecutarse mediante autorización del Tribunal, a moción de parte y previa notificación a todas las partes. Si después de registrada la sentencia se suspende su ejecución por una orden o sentencia del Tribunal, o por efecto de ley, el tiempo durante el cual ha sido suspendida dicha ejecución deberá excluirse del cómputo de los cinco (5) años durante los cuales podrá expedirse el mandamiento de ejecución.

A tales efectos, es necesario recurrir a la ejecución de una sentencia, cuando la parte obligada incumple con sus términos. *Mun. de San Juan v. Prof. Research*, 171 DPR 219, 247-48 (2007). Por lo tanto, cuando la ejecución de la sentencia verse sobre el cobro

de dinero, la Regla 51.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 51.2, dispone lo siguiente:

> El procedimiento para ejecutar una sentencia u orden para el pago de una suma de dinero y para recobrar las costas concedidas por el Tribunal será mediante un mandamiento de ejecución. El mandamiento de ejecución especificará los términos de la sentencia y la cantidad pendiente de pago. Todo mandamiento de ejecución será dirigido al alguacil o alguacila para ser entregado a la parte interesada. En todo caso de ejecución, incluso aquellos en los que se realice una venta judicial, el alguacil o alguacila entregará al Secretario o la Secretaria el mandamiento debidamente diligenciado y cualquier sobrante que tenga en su poder dentro del término de quince (15) días a partir de la fecha en que se realice la ejecución.

**C**.

El contrato de transacción está regulado por los artículos 1497 a 1504 del Código Civil de Puerto Rico del 2020 (31 LPRA. secs. 10641-10648).   Allí se establece que mediante concesiones recíprocas, las partes ponen fin a un litigio o a su incertidumbre sobre una relación jurídica. Código Civil, Art. 1497, 31 LPRA. sec. 10641.

Previo al nuevo Código Civil de 2020, el Tribunal Supremo había interpretado que un contrato de transacción puede surgir a la vida jurídica tanto de forma judicial, como extrajudicial. Claro está, siempre se requerirá que cada uno los contratantes cumplan con una concesión. *Sagardía De Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 498 (2009*); Neca Mortg. Corp. v. A & W Dev. S.E.,* 137 DPR 860, 870 (1995). La jurisprudencia ha reconocido como necesarios para que se constituyan estos contratos, los siguientes elementos:   a.  la existencia de una controversia o relación jurídica incierta litigiosa; b.  la intención de las partes de sustituir—mediante la transacción—, la incertidumbre sobre los elementos objetivos de la relación jurídica por otra "cierta e incontestable"; y c.   concesiones

recíprocas. *Sagardía De Jesús v. Hosp. Aux. Mutuo,* 177 DPR 484, 498 (2009).

Por su parte, el artículo 1237 del Código Civil de 2020, establece que los contratos quedan perfeccionados desde que las partes manifiestan su consentimiento sobre el objeto y la causa, salvo en los casos en que se requiere el cumplimiento de una formalidad solemne o cuando se pacta una condición suspensiva.

En otras palabras, el acuerdo transaccional requiere el consentimiento de los contratantes, que tiene que ser consensual; su **objeto**[6] es la controversia entre las partes —la polémica judicial o extrajudicial— pues sin ella no puede existir la transacción; y su **causa** consiste en la eliminación de la controversia mediante recíprocas concesiones, pues si bien tiene el propósito de desaparecer un conflicto pendiente, se diferencia de otras figuras contractuales que tienen la misma finalidad, en que ello se logra mediante renuncias mutuas. *Neca Mortg. Corp. v. A & W Dev. S.E., supra.*[7]

Si el Tribunal acoge un acuerdo transaccional a fines de dar por terminado un litigio, lo acordado tendrá efecto de cosa juzgada entre las partes. Código Civil, Art. 1500, 31 LPRA. sec. 10644 y como caso relacionado véase *Rodríguez Rosado v. Zayas Martínez,* 133 DPR 406, 410 (1993). Igualmente, el contrato de transacción se tiene que interpretar restrictivamente. Código Civil, Art. 1499, 31 LPRA. sec. 10643.

Sin embargo, si las partes deciden no incorporar el acuerdo al proceso judicial, bastará un aviso de desistimiento de la demanda para que el Tribunal conceda finalidad a las controversias entre las

---

[6] El Artículo 1502, del Código Civil de 2020 (31 LPRA § 10646) establece como Objeto ilícito: El contrato de transacción no puede incluir cláusulas relacionadas con leyes imperativas o derechos irrenunciables, con alimentos futuros ni con cualquier relación o derecho que no sea estrictamente patrimonial.

[7] El artículo allí citado es el actual Artículo 1237, del Código Civil de 2020 (31 LPRA § 9771) - Perfección del Contrato.

partes. En estos casos, aunque la transacción es extrajudicial, tendrá el mismo efecto de cosa juzgada. *Neca Mortg. Corp. v. A & W Dev. S.E., supra*, pág. 870.

Por otra parte, resulta importante destacar que el Artículo 1503 (31 LPRA § 10647) requiere que la transacción debe constar en un escrito firmado por las partes o en una resolución o una sentencia dictada por el Tribunal. Si se refiere a derechos constituidos mediante escritura pública, se requerirá esta formalidad. La inobservancia de estas reglas la hace nula.

Por último, el Artículo 1504(31 LPRA § 10648) menciona varias causas para la invalidez de la transacción.   El articulado establece que además de las causas que invalidan todo acto jurídico, la transacción es inválida cuando:

(a) la situación que la genera no se corresponde con los hechos reales y el litigio o la incertidumbre no hubieran aparecido de haberse conocido la situación real;

(b) incluye títulos total o parcialmente inexistentes;

(c) incluye títulos sobre los cuales se ignora que existe otro mejor;

(d) incluye aspectos sobre los cuales se ignora que ya están resueltos mediante sentencia firme; o

(e) la efectividad de una prestación es insegura

### III.

Lo peticionarios nos solicitan que revisemos y revoquemos al foro primario, por denegar las mociones de reconsideración y por haber emitido una orden de ejecución de sentencia y embargo contra ocho (8) co-querellados que nunca fueron patronos de los recurridos.

Del análisis del expediente apelativo y los argumentos de las partes, **las versiones sobre el acuerdo privado siguen siendo irreconciliables**.   Del recurso presentado y alegatos no surge

claramente quiénes quedaron obligados por el acuerdo privado, cuándo y cómo se pactó, y si se cumplieron con los requisitos del nuevo Código Civil para una transacción**.** Llamamos la atención que el propio TPI, con posterioridad a dictar la Sentencia del 1 de mayo de 2023, estuvo en similar encrucijada.  Fue por esto, que el 31 de julio de 2023, les ordenó a las partes a reunirse para **discutir las diferencias** sobre el acuerdo privado.

En ánimo de conocer qué ocurrió en la vista transaccional del día 1 de mayo de 2023, nos dimos a la tarea de escuchar la grabación de ese día.[8]

En apretada síntesis, mencionaremos lo vertido para el récord durante la vista.

El caso fue llamado. Compareció el Lcdo. Jaime Sanabria Montañez quien indicó que comparece como representante legal de Latin Media House LLC[9] y el Lcdo. Rafael A. Ortiz Mendoza en representación de los cinco (5) querellantes.  El Lcdo. Sanabria Montañez informó que las partes se cursaron una oferta fuera del récord, la cual entendió fue aceptada por los querellantes. El Lcdo. Sanabria Montañez, también indicó que había un asunto solicitado por los querellantes, que estaba pendiente de discutir con su cliente. Por su parte, el Lcdo. Ortiz Mendoza, indicó que la oferta del querellado fue recibida el pasado viernes y era muy similar a una presentada por ellos en el pasado mes de noviembre.

El Lcdo. Ortiz Mendoza, también informó que quedaba un asunto relacionado con unos balances de vacaciones de los querellantes.  Ante esto, el Lcdo. Sanabria Montañez indicó que ese asunto tenía que discutirlo con su representado. En ese momento el Tribunal indicó que para dictar una sentencia por estipulación, no

---

[8] La grabación fue realizada en DCR Player con una duración de 20 minutos con 14 segundo.  La grabación comenzó a las 10:10 am.
[9] Grabación, minuto 1;18.  El licenciado nunca mencionó que representaba algún otro co-querellado.

necesita una cantidad de dinero exacta. En cuanto a la falta de información para el pago de los balances de vacaciones, el Tribunal invitó a los abogados que intentaran llegar a un acuerdo que cubriera ese segundo aspecto (pago de vacaciones).    Ante la sugerencia, el Lcdo. Sanabria Montañez, informó al Tribunal que no podía atender el asunto con una llamada telefónica, por lo que necesitaría varios días.

El licenciado Sanabria Montañez, aprovechó para informar que durante esa semana o la próxima le estaría enviando al Lcdo. Ortiz Mendoza **"el borrador del acuerdo"** y que se reunirían para **"negociar esas cláusulas"** [10].  Indicó que en ese borrador se podría incluir un lenguaje que atendiera el asunto del pago de balances de vacaciones. Sobre este tema, se mencionó en sala que existe la controversia si los querellantes son o no acreedores del pago de vacaciones. No empece a las reservas del licenciado Sanabria Montañez, el Tribunal reiteró su invitación a que intentaran redactar un lenguaje en consenso que atendiera el tema, así se dictaría la sentencia en el momento.   Ante las reiteradas invitaciones para llegar a un acuerdo, las partes solicitaron un receso.

Reanudados los trabajos el Lcdo. Sanabria Montañez informó que llegaron a un acuerdo confidencial sobre el "otro tema" y que "trabajarían" por un acuerdo.  Por su parte, el Lcdo. Ortiz Mendoza reitera que el contenido del acuerdo es confidencial.  Informa que acordó que sus clientes recibirían los correspondientes pagos entre el 15 y 30 de mayo de 2023. Por último, el Lcdo. Ortiz Mendoza le solicitó al Tribunal que mantuviera el señalamiento del 24 de mayo (fecha señalada para el juicio) en la eventualidad que el pago no se recibiera, para que entonces, se celebrara el juicio ese día.

---

[10] Minuto 7:32 -7:41

El Tribunal menciona que, ante una sentencia por estipulación, no sería necesario la celebración de un juicio. Lo único que procedería sería la ejecución de la sentencia.

Ante tales pronunciamientos, el Lcdo. Ortiz Mendoza insistió, como "abundancia de precaución" que el Tribunal mantuviera la jurisdicción del caso. Indicó que lo solicitó de manera cautelar, por si los acuerdos no se firman o si no se realizan los pagos[11].

Finalmente, el Tribunal informó que les tomaría juramento a todas las partes, y que dictaría una sentencia por estipulación, donde reconocerá que el acuerdo será uno privado. El dictamen solo recogerá que los "pagos se realizarán en o antes del 23 de mayo de 2023". El Tribunal indicó que no mencionaría cantidades de dinero, ya que las mismas pueden variar por querellante.

Previo a formalizar el acuerdo, se le tomó juramento al Sr. Max Carranza, en representación de Latin Media House LLC. Igualmente se juramentó a los cinco querellantes. Todas las partes se comprometieron a firmar cualquier documento relacionado al acuerdo privado. El Tribunal concluyó indicando que los términos y condiciones específicos de ese acuerdo privado se podrían recoger en un documento que sería firmado por todos o por los representantes legales. También indicó que dicho documento sería vinculante para todas las partes y la parte que incumpla se le podrá requerir judicialmente el cumplimiento específico de lo acordado. Por último, advirtió a las partes que en el interín podían haber renegociaciones adicionales, las cuales deberán ser informadas al TPI.

Del relato de la vista transaccional, no se desprenden cuáles fueron la obligaciones, concesiones o condiciones necesarias para que se materializara el acuerdo privado entre las partes. Realmente

---

[11] Grabación, minuto 13:00 -13:25

nos encontramos ante un sinnúmero de alegaciones post sentencia, irreconciliables e inciertas. De lo discutido en la vista, no surge cuáles fueron las contraprestaciones, qué partes quedaron obligadas y la procedencia o no de la orden y mandamiento de ejecución. Sin embargo, nos llamó la atención durante la vista, que el Lcdo. Sanabria Montañez sí mencionó que enviaría a los querellantes un *"borrador de acuerdo"*. En otro momento, se les informó a las partes que los *"términos y condiciones específicos del acuerdo se podrían recoger en un documento"*. Al final de la vista, igualmente se les advirtió a las partes que podían surgir *"renegociaciones adicionales"*. Estas expresiones, entre otras que surgen de la grabación, nos llevan a pensar que lo discutido en sala parecería algo preliminar, sujeto a un borrador por escrito y posibles renegociaciones.

Lamentablemente, del récord de la vista transaccional y del expediente apelativo, no surge información suficiente, ni específica que nos ayude a resolver la procedencia de la orden y mandamiento, ante el alegado incumplimiento del acuerdo privado.

IV.

Visto lo anterior, y ante la incertidumbre jurídica que permea el acuerdo privado, se devuelve el caso al Tribunal de Primera Instancia, para que se dilucide la **existencia**[12] **y contenido** del acuerdo privado (concesiones recíprocas) y quiénes quedaron obligados. El Tribunal de Primera Instancia, deberá tomar las providencias necesarias para mantener la privacidad del acuerdo, salvo las partes renuncien expresamente. Como consecuencia, se expide el auto de *certiorari* y se **revoca** la Orden y Mandamientos de Ejecución del 19 de agosto de 2023.

---

[12] Se desconoce si la transacción del presente caso cumple con los artículos 1497 a 1504 del Código Civil de Puerto Rico del 2020 (31 LPRA. secs. 10641-10648).

Durante la continuación de los procedimientos, el Tribunal de Primera Instancia deberá evaluar posibles remedios contra la *Sentencia* dictada el 1 de mayo de 2023, conforme a la Regla 49 de Procedimiento Civil. Por el momento, dicho dictamen no es ejecutable, ya que se ignora la existencia y contenido del acuerdo final.

**Notifíquese inmediatamente.**

Lo acuerda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones