Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| CARLOS MERCADER PÉREZ<br><br>Apelado<br><br>V.<br><br>KRYSTAL LARACUENTE CORTÉS<br><br>Apelante | KLAN202400071 | *Apelación* procedente del Tribunal de Primera Instancia, Sala de Familia y Menores de Bayamón<br><br>Caso Núm.: GB2023RF00028<br><br>Sobre: Alimentos |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 25 de marzo de 2024.

El 19 de enero de 2024, compareció ante este Tribunal de Apelaciones la señora Krystal Laracuente Cortés (en adelante, parte apelante o señora Laracuente Cortés), por medio de recurso de *Apelación*. Mediante este, nos solicita que revisemos la *Sentencia* emitida y notificada el 4 de diciembre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Bayamón. En virtud del aludido dictamen, el foro *a quo* le impuso al señor Carlos Mercader Pérez (en adelante, señor Mercader Pérez o parte apelada) el pago de $1,847.50 mensuales en concepto de pensión alimenticia; así como, pagar el 100% del gasto de los pañales, 100% de todos los gastos médicos no cubiertos por el plan médico, el 100% de los gastos extraordinarios requeridos mediante reembolso y proveer plan médico a favor de la menor ALML.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia* apelada.

Número Identificador

SEN2024 _____

# I

Los hechos que iniciaron la controversia de epígrafe se remontan a una *Solicitud de Fijación de Pensión*, instada el 21 de marzo de 2023, por la parte apelada, en contra de la parte apelante. De acuerdo con la aludida solicitud, las partes son los progenitores de la menor ALML, nacida en noviembre de 2022. Según se desprende de las alegaciones de la solicitud, desde el nacimiento de la menor ALML, el señor Mercader Pérez, ha contribuido económicamente a los gastos de esta. En particular, ha realizado una aportación de $2,167.00 mensuales, ha cubierto los gastos relacionados con los pañales y con el plan médico de la menor ALML. El señor Mercader Pérez le sometió una propuesta a la señora Laracuente Cortés, que consistía en que este asumiría el pago mensual de $2,720,00 de pensión alimenticia en beneficio de la menor ALML, los gastos de los pañales y continuaría proveyendo el plan médico MCS. De acuerdo con la *Solicitud de Fijación de Pensión*, el pago mensual propuesto consideraba todos los gastos de la menor ALML, y sería cubierta dentro de los primeros diez (10) días de cada mes mediante pago directo a la parte apelante. De igual forma, la parte apelada expresó que, asumiría el pago anual de la matrícula y del *back to school* de la menor ALML cuando fuese el momento, al igual que asumiría cualquier gasto médico de emergencia que no fuese cubierto por el plan médico provisto. Sin embargo, en la medida en que no pudo lograrse ningún acuerdo acerca de la propuesta, solicitó que, se refiriera el asunto ante la consideración de una Examinadora de Pensiones Alimenticias (en adelante EPA) para que fuese considerada o en su defecto, para que se estableciera una pensión conforme a las Guías Mandatorias de ASUME y/o bajo la asunción de capacidad económica de la parte apelada.

El 23 de marzo de 2023, mediante *Orden* se refirió a la EPA para evaluación y recomendación. Además, fue emitida la *Notificaci[ó]n Citaci[ó]n para Vista*, donde se les requirió a las partes comparecer el 12 de abril de 2023 mediante videoconferencia ante la EPA.

En igual fecha, la EPA emitió el *Acta de la Examinadora de Pensiones Alimenticias[1]*. Mediante esta, recomendó que se mantuviese la vista de alimentos señalada por el foro *a quo* para el 12 de abril de 2023 y que se requiriera que ambas partes presentaran ante el tribunal mediante moción, el Formulario de Datos Personales, la Planilla de Información Personal y Económica (PIPE) completados, evidencia de sus ingresos y de los gastos reclamados de la menor, al menos cinco (5) días previos a la vista, de no haberse presentado previamente. Además, les apercibió a las partes que, toda evidencia a utilizarse en la vista de alimentos, debía ser presentada mediante moción en el expediente digital, y que, toda evidencia que no fuese compartida entre las partes antes del señalamiento sería declarada inadmisible en la vista de alimentos.

El 24 de marzo de 2023, el Tribunal de Primera Instancia emitió una *Orden* donde le ordenó a las partes comparecer a la vista señalada para el 12 de abril de 2023.

Posteriormente, la señora Laracuente Cortés presentó la *Contestación a Demanda*. A través de esta, la parte apelante admitió que, el señor Mercader Pérez había pagado a la niñera de la menor ALML la cantidad de $2,167.00 por el cuido de esta, al igual que había pagado pañales, "toallitas" y plan médico. No obstante, sostuvo que, la parte apelada no aportaba a los gastos del hogar, ni otros gastos. Indicó no haber aceptado la oferta propuesta por la parte apelada debido a que, según esta, la misma únicamente cubría

---

[1] Notificada el 24 de marzo de 2023.

el gasto de cuido en el hogar. Igualmente, aceptó que se estableciera la pensión por medio de la EPA.

Así las cosas, el 28 de marzo de 2023, la parte peticionaria presentó la *Moci[ó]n en Solicitud de Orden al Demandante*. Solicitó al foro primario que le ordenara a la parte apelada expresar si iba a asumir capacidad económica o si se acogería al cálculo de las Guías Mandatorias.

Consecuentemente, el foro de primera instancia mediante *Orden* emitida el 29 de marzo de 2023, le ordenó a la parte apelada a exponerse sobre lo solicitado en el término de cinco (5) días.

Por su parte, la parte apelada presentó la *Moción de Réplica en Oposición y en Cumplimiento de Orden y en Solicitud de Orden para que la Demandada Someta las Evidencias de los Gastos de la Menor y su PIPE Juramentada para Poder Determinar si Asume Capacidad Económica*. Argumentó que, debido a que había realizado una propuesta de pensión alimentaria mensual que fue rechazada, ostentaba el derecho e interés en conocer las evidencias de los gastos de la menor ALML. Lo anterior, con el propósito de poder determinar si asumía capacidad económica o si por el contrario, presentaba sus ingresos para que se estableciera la pensión alimentaria en virtud de las Guías Mandatorias en beneficio de la menor ALML. Reiteró que, continuaba pagando la cantidad de $2,166.67 en concepto de pensión alimentaria para la menor ALML, al igual que los pañales cada mes. Conforme a lo anterior, solicitó al foro *a quo* que, le ordenara a la parte apelante el cumplimiento estricto con la *Orden* de la EPA, para presentar su Planilla de Información Personal y Económica (PIPE) juramentada con las evidencias de todos los gastos de la menor ALML, con el fin de poder estar en posición de informar si asumiría o no capacidad económica.

A tales efectos, el 30 de marzo de 2023, la primera instancia judicial emitió una *Orden,* donde declaró Con Lugar la moción presentada por la parte apelada.

El 20 de abril de 2023, la señora Laracuente Cortés presentó la *Moción Uniendo PIPE y Documentos.* Por su parte, el 2 de mayo de 2023, el señor Mercader Pérez presentó la *Moci[ó]n Anejando PIPE y Anejos.*

Transcurridos varios eventos procesales, innecesarios pormenorizar, el 22 de mayo de 2023, la EPA emitió el *Informe de la Examinadora de Pensiones Alimenticias* donde recomendó que se acogiera un acuerdo suscrito entre las partes y en su consecuencia se estableciera que el padre no custodio, el señor Mercader Pérez, proveyera una pensión alimentaria provisional de $2,700.00 mensuales, para beneficio de la menor ALML.

Subsiguientemente, el foro de primera instancia emitió una *Resolución,* por medio de la cual estableció la pensión alimentaria provisional de $2,700.00 mensuales por parte de la parte apelada a beneficio de la menor ALML. Además, se les ordenó a las partes a compartir los gastos de la menor en las siguientes proporciones: el señor Mercader Pérez, el sesenta por ciento (60%) y la señora Laracuente Cortés, el cuarenta por ciento (40%) de todos los gastos médicos que no fuesen cubiertos por el plan médico, así como los gastos extraordinarios requeridos a base de reembolso.

Luego de sendas mociones presentadas por las partes, el señor Mercader Pérez presentó la *Moción Informando Aceptación de Capacidad para el Pago de la Pensi[ó]n Alimentaria de la Hija Menor de Edad.* Por medio de la anterior, aceptó la capacidad para el pago de los gastos exclusivamente de la menor ALML que el Tribunal determinase que fueran razonables. Esta fue declarada Ha Lugar mediante *Orden* emitida el 15 de agosto de 2023 por el foro primario.

Acaecidas múltiples incidencias procesales, innecesarias pormenorizar, el 4 de diciembre de 2023, la EPA, presentó su *Informe de la Examinadora de Pensiones Alimenticias*, en la cual realizó las siguientes Determinaciones de Hechos:

1. La Sra. Krystal Laracuente Cortés y el Sr. Carlos Mercader Pérez son los padres de la menor A.L.M.L. nacida el 1 de noviembre de 2022, cuenta con un (1) año y reside con su señora madre, la Sra. Krystal Laracuente Cortés.

2. La Sra. Krystal Laracuente Cortés es abogada en la Administración de Servicios Generales, además, es periodista y en ocasiones hace trabajos de producción. La señora Laracuente Cortés tiene una propiedad que está alquilada por $740.00. El ingreso neto mensual calculado en la vista celebrada el 22 de mayo de 2023 fue de $7,024.00.

3. La menor se beneficia de cubierta de plan médico privado provisto por el Sr. Carlos Mercader Pérez.

4. Además de la menor A.L.M.L. habida con el señor Mercader Pérez, la señora Laracuente Cortés tiene dos hijos mayores que están en tercer y cuarto grado.

5. Los gastos reportados en la PIPE de la Sra. Krystal Laracuente Cortés según juramentada el 20 de abril de 2024 son los siguientes:

| Concepto del Gasto | Cantidad del gasto mensual |
|---|---|
| Vivienda | $1,300.00 mensual |
| Hipoteca | $665.00 |
| Cuota de mantenimiento | $171.00 |
| Energía Eléctrica | $369.00 mensual |
| Celular | $103.00 mensual |
| Internet | $60.00 mensual |
| Alimentos en el hogar | $500.00 |
| Alimentos fuera del hogar | $300.00 |
| Alimentos en el hogar | $25.00 menor |
| Compra de ropa | $200.00 |
| Seguro médico | $95.00 mensual[2] |
| Deducibles | $200 anual |
| Medicinas | $500.00 anual |
| Seguro de automóvil | $1,365.00 anual |
| Otros | $39.00 |
| Cuido extendido | $2,166.00 mensual |
| Préstamo automóvil | $679.00 mensual |
| Mantenimiento | $300.00 anual |
| Estacionamiento | $30.00 mensual |
| Peaje | $30.00 mensual |
| Gasolina | $280.00 mensual |

6. Los gastos reportados en la PIPE de la Sra. Krystal Laracuente Cortés según juramentada el 22 de mayo de 2023 son los mismos que reportó en la

---

[2] No se consideró debido a que el plan médico del cual se beneficia la menor es provisto por el Sr. Carlos Mercader Pérez.

PIPE juramentada el 20 de abril de 2023 con excepción de lo siguiente: el gasto de hipoteca reportado subió de $665.00 a $840.00 y se añadieron los gastos de pañales y wipes por $125.00 mensual y productos de higiene por $25.00 mensual.

7. Los gastos reportados en la PIPE de la Sra. Krystal Laracuente Cortés según juramentada el 18 de agosto de 2023 son los siguientes:

| Concepto del Gasto | Cantidad del gasto mensual |
|---|---|
| Vivienda | $1,300.00 mensual |
| Hipoteca | $840.00 |
| Cuota de mantenimiento | $171.00 |
| Energía Eléctrica | $369.00 mensual |
| Celular | $103.00 mensual |
| Internet | $65.00 mensual |
| Alimentos en el hogar | $1,000.00 |
| Alimentos fuera del hogar | $300.00 |
| Alimentos en el hogar | $25.00 menor |
| Compra de ropa | 500.00(menor) |
| Seguro médico | $95.00 mensual[3] |
| Deducibles | $200 anual |
| Medicinas | $500.00 anual |
| Seguro de automóvil | $1,365.00 anual ó $114.00 |
| Otros | $39.00 |
| Cuido extendido | $2,300.00 mensual |
| Préstamo automóvil | $679.00 mensual |
| Mantenimiento | $300.00 anual |
| Estacionamiento | $30.00 mensual |
| Peaje | $30.00 mensual |
| Gasolina | $350.00 mensual |
| Pañales y wipes | $145.00 mensual |
| Productos de higiene mensual | $25.00 |
| Leche fórmula | $138.00 mensual |

8. En el hogar donde reside la menor con la Sra. Krystal Laracuente Cortés el gasto de vivienda es de $1,300.00 y residen allí cuatro (4) personas.

9. Los siguientes gastos fueron estipulados por las partes:

   • $1,300.00 de vivienda y residen cuatro personas en el hogar. A la menor le corresponde la proporción de $325.00.

   • $369.00 de energía eléctrica y a la menor le corresponde la proporción de $92.25[.]

   • $60.00 de agua y a la menor le corresponde la proporción de $15.00[.]

   • $25.00 para los productos de higiene[.]

   • $300.00 que incluye aportación para la comida y la leche de fórmula que consume la menor[.]

---

[3] No se consideró debido a que el plan médico del cual se beneficia la menor es provisto por el Sr. Carlos Mercader Pérez.

10. La Sra. Andrea Rivera trabaja en el hogar de la Sra. Krystal Laracuente Cortés de lunes a viernes de 9:00 a.m. a 4:00 p.m.

11. La Sra. Andrea Rivera (también se le llamó como Doña Mari durante la vista) trabaja en el hogar de la Sra. Krystal Laracuente Cortés desde el mes de noviembre de 2022 y en sus inicios fue el Sr. Carlos Mercader Pérez quien contrató los servicios de la Sra. Andrea Rivera a través de una persona llamada Cristina. Es decir, la contratación de la Sra. Andrea Rivera fue con la señora Cristina y los pagos eran a través de esa persona.

12. El Sr. Carlos Mercader Pérez declaró que buscó ayuda, a través de la señora Cristina, y quien terminó trabajando en la casa de la señora Laracuente Cortés, fue la Sra. Andrea Rivera. Esto se debió a que la Sra. Krystal Laracuente Cortés, tuvo una situación delicada de salud, aproximadamente dos semanas después del parto de la menor A.L.M.L. Durante ese proceso, la señora Laracuente Cortés estuvo en cama y debido a que el hogar donde reside tiene escaleras y ella no podía bajar y subir las mismas, la ayuda consistía en hacer comida para ella y los otros menores y limpieza en el hogar además de cuidar la menor. Los pagos de forma semanal ó de forma bi-semanal y se hacían a través del dispositivo de Venmo.

13. La Sra. Krystal Laracuente Cortés no le retiene ni paga contribuciones sobre ingresos ni seguro social por las sumas que le paga a la Sra. Andrea Rivera. Tampoco paga suma alguna por concepto de bono de navidad, ni desempleo estatal o federal ni prima del fondo del seguro del Estado. Declaró que ella realiza el pago a la Sra. Andrea Rivera en los mismos términos y condiciones que cuando lo pagaba el Sr. Carlos Mercader Pérez.

14. Declaró la señora Laracuente Cortés que al comenzar ella a realizar el pago para los servicios de la Sra. Andrea Rivera, se comunicó con la señora Cristina y le preguntó directamente sobre los términos del pago que hacía el Sr. Carlos Mercader Pérez, de forma que ella continuase haciendo los mismos de la misma manera. Sobre el particular, la señora Laracuente Cortés le preguntó a la señora Cristina si ella le realizaba algún descuento a la Sra. Andrea Rivera toda vez que ya no sería la persona intermediaria.

15. La contratación y los pagos comenzaron a hacerse por parte de la Sra. Krystal Laracuente Cortés directamente a la Sra. Andrea Rivera a partir del mes de junio o julio del año 2023.

16. En algún momento, las partes visitaron el cuido "Watch me Grow" como alternativa para matricular a la menor en el mismo en octubre 2022, además

visitó la señora Larac[u]ente Cortés el cuido "Semilla" y se orientó por teléfono con otro cuido llamado "Rainforest" (este último no lo visitó).

17. Cuando lleva a cabo trabajos de producción, la señora Laracuente Cortés los realiza en diversos lugares pues depende del lugar donde se lleve a cabo la producción. En el último año, ha llevado a cabo labores en el Coliseo de Puerto Rico, en el área del Condado, en el Tribunal Federal y en distintos municipios.

18. La señora Laracuente declaró que para prepararse para la producción de dichos eventos, no utilizó las facilidades de su hogar. Ahora bien, en el trabajo anterior en el cual estuvo hasta el mes de marzo de 2023, sí utilizaba las facilidades de su hogar para prepararse para dichos trabajos.

19. Surge de la demanda de alimentos presentada por el señor Mercader Pérez el 21 de marzo de 2023, que aportaba $2,167.00, para los pañales mediante una subscripción mensual por internet y además proveía el plan médico privado del cual se beneficia la menor.

20. En la residencia donde vive la señora Laracuente Cortés hay escaleras. Los cuartos quedan arriba y abajo está la cocina, la sala y el resto del hogar.

21. El día del alumbramiento la señora Laracuente Cortés tuvo complicaciones de salud. Unos días después del nacimiento de la menor la señora Laracuente Cortés tuvo una recaída y tuvo que permanecer unos días en el hospital. La madre de la señora Laracuente Cortés la asistió unos días, pero informó que no podía encargarse todo el tiempo de ella y por eso el señor Mercader busc[ó] ayuda de una tercera persona para asistirla.

22. El señor Mercader Pérez buscó una persona que pudiese asistir a la señora Laracuente Cortés durante su proceso de recuperación, que la asistiese con las tareas del hogar y con la bebé.

23. Durante el proceso de contratación, el señor Mercader Pérez indicó que la persona venía a ayudar a la señora Laracuente Cortés con la cocina, la limpieza del hogar, si tenía que bañarse o descansar, también cuidaría de la menor, pero sus funciones no era exclusivamente el cuido de ésta.

24. El señor Mercader Pérez estuvo visitando el hogar de la señora Laracuente Cortés semanalmente, hasta finales de febrero del año 2023. Durante sus visitas, observó que la Sra. Andrea Rivera ayudaba a limpiar los cuartos de los otros dos menores y cocinaba en el hogar de la señora Laracuente Cortés. En una ocasión comió comida preparada por la Sra. Andrea Rivera.

25. Los dos hijos mayores de la señora Laracuente Cortés se fueron con el padre de éstos durante el periodo de acción de gracias en noviembre de 2022 y regresaron a su casa unos días previo a la navidad.

26. Las partes dialogaron para matricular a la menor en el cuido "Watch me grow" para el mes de febrero de 2023. Posteriormente, la señora Laracuente Cortés no quiso que la menor fuese matriculada en un cuido y prefirió que permaneciese en el hogar.

27. La posición del señor Mercader Pérez es que la menor debía estar en un cuido para que socialice con otros niños.

28. El costo de los pañales de la menor en el cual incurría el señor Mercader Pérez, para el mes de marzo de 2023 era de $35.00 a $40.00, pero declaró que varía dependiendo del tamaño del pañal. La última caja de pañales, gasto incurrido por el señor Mercader Pérez fue entregada en el hogar de la señora Laracuente Cortés el 11 de octubre de 2023 y el costo fue de $45.15.

29. Los pañales de la menor fueron entregados en la casa de la señora Laracuente Cortés en las siguientes fechas: 18 de febrero, 28 de marzo, 5 de mayo y 5 de junio y 11 de octubre del año 2023. La última caja de pampers entregada el 11 de octubre de 2023 traía ochenta (80) pampers.

30. La menor utiliza entre 7 a 8 pañales diarios para un total aproximado de 240 al mes o aproximadamente 3 cajas mensuales. El señor Mercader Pérez continuará supliendo el 100% del gasto de los pañales de la menor mediante la suscripción en Amazon y entrega en el hogar de la señora Laracuente Cortés.

31. El viernes 18 de agosto de 2023 y el lunes 21 de agosto de 2023, en el horario de 9:00 a.m. a 4:00 p.m. la hija menor de las partes estuvo en la casa con la Sra. Andrea Rivera.

32. Tanto el 18 de agosto de 2023 como el 21 de agosto de 2023, se realizaron gestiones mediante un emplazador, para diligenciar la citación de la Sra. Andrea Rivera para la vista a celebrarse el 31 de octubre de 2023, en la casa de la señora Laracuente Cortés y no fue posible.

33. Se realizó un tercer intento para diligenciar la citación dirigida a la Sra. Andrea Rivera el 23 de octubre de 2023 y tampoco fue posible.

34. Los únicos recibos de pago o facturas presentadas para evidencias los gastos reportados en las PIPES de la señora Laracuente Cortés fueron los siguientes:

   a. factura de Liberty sobre el servicio del teléfono móvil por $103.92 con fecha del 5 de agosto de 2023

   b. un recibo de transferencia a cuenta de cheques con fecha de 7 de agosto de 2023 por $1,300.00

   c. un recibo de pago Popular [L]easing el cual indica que es por débito directo con fecha de 10 de agosto de 2023 por $678.65

   d. una hoja de tres pagos

      i. Millenia Park Home con fecha de 16 de mayo de 2023 por $171.00

      ii. Mastercard [B]anco [P]opular con fecha de 16 de mayo de 2023 por $30.00

      iii. Popular [L]easing débito directo con fecha de 10 de mayo de 2023 por $678.65

   e. una factura de Liberty con fecha de facturación de 14 de junio de 2023 por $68.34 sobre pago de internet.

   f. Factura de LUMA con fecha de 12 de agosto de 2023 por $662.10

   g. Transferencia de pago por ATH móvil con fecha de 5 de agosto de 2023 a Lorimar Rodríguez por $30.00.

A su vez, la EPA recomendó lo siguiente:

Recomendamos se fije que el padre no custodio, Sr. Carlos Mercader Pérez proveerá una pensión alimenticia regular de $1,847.50 mensual, para beneficio de la menor A.L.M.L. habida entre las partes. Esta pensión se pagará en pagos directamente a la Sra. Krystal Laracuente Cortés mediante cheque, dentro de los primeros cinco (1-5) días de cada mes. La pensión alimenticia es efectiva al 31 de octubre del año 2023 y se enviará a la siguiente dirección postal: Cond. Prados del Monte 1407 Basilio Cátala Guaynabo P.R. 00971. Además, el Sr. Carlos Mercader Pérez continuará pagando el 100% del costo de los pañales de la menor mediante a subscripción mensual por internet, mientras exista el gasto. La Sra. Krystal Laracuente Cortés le informará si hay algún cambio en el tamaño de los pañales a ser utilizados por la menor, de manera que se compren correctamente y puedan ser aprovechados por la menor.

Además, como parte de la pensión alimenticia regular, el señor Mercader Pérez asumirá el 100% de los **gastos médicos** que no cubra el plan **médico y de los gastos extraordinarios requeridos** a base de reembolso. Estos gastos extraordinarios requeridos son aquellos

que como su nombre lo indica son necesarios y así lo solicita ya sea un facultativo médico, una institución educativa o un proveedor de un servicio. Los gastos extraordinarios requeridos presuponen que ambos padres (con patria potestad compartida) consintieron que su hija/hijo participara o acudiera al facultativo, institución o proveedor de servicio. Si fuese mediante reembolso, la parte que incurra en el gasto tendrá diez (10) días contados a partir de la fecha del pago para enviarle a la otra parte la evidencia. La otra parte tendrá a su vez diez (10) días contados a partir del recibo de la evidencia para pagarle a la parte que incurrió en el costo el porciento que le corresponda de lo que refleje el/los recibos.

La menor se beneficia de cubierta de plan médico privado provista por el Sr. Carlos Mercader Pérez.

No existe deuda por el efecto retroactivo de la pensión alimenticia toda vez que la cuantía de la pensión alimenticia total resultó ser menor a la provisional y es efectiva a la fecha de la determinación.

Por ser una pensión alimenticia a pagarse de forma directa, ambas partes deberán conservar el registro de los pagos realizados y recibidos.

Conceda y fije una suma razonable por honorarios de abogado por la comparecencia a tres vistas.

Instruya a ambas partes de su responsabilidad de informar al Tribunal de cualquier cambio de dirección, patrono o salario que tengan.

Consecuentemente, en igual fecha, el Tribunal de Primera Instancia emitió *Sentencia* en la cual acogió las recomendaciones de la EPA y las hizo formar parte de esta, por lo que dictó lo siguiente:

[........]

**En consecuencia, se establece la pensión alimenticia regular que debe proveer el padre no custodio, Sr. Carlos Mercader Pérez, para beneficio de la menor A.L.M.[L]., en la suma de $1,847.50 mensual efectiva al 31 de octubre de 2023 y a ser pagada directamente a la Sra. Krystal Laracuente Cortés, mediante cheque. El pago de la pensión alimenticia mediante cheque será enviada a la siguiente dirección postal: Cond. Prados del Monte 1407 Basilio Cátala Guaynabo, P.R. 00971. Además, el Sr. Carlos Mercader Pérez continuará pagando el 100% del costo de los pañales de la menor mediante la subscripción mensual por internet, mientras exista el gasto. La Sra. Krystal Laracuente Cortés le informará si hay algún cambio en el tamaño de los pañales a ser utilizados por la menor, de manera que se compren correctamente y puedan ser aprovechados por la menor.**

Se ordena al padre, **Sr. Carlos Mercader Pérez cubrir el 100% de todos los gastos médicos que no cubra el plan médico** a base de reembolso. **La parte que incurra en el gasto tendrá diez (10) días a partir de haber incurrido en el mismo para presentarle evidencia a la otra parte y la otra parte a su vez, tendrá diez (10) días para reembolsar el por ciento que corresponda de los recibos o facturas.**

Se ordena al padre, **Sr. Carlos Mercader Pérez cubrir el 100% de los gastos extraordinarios requeridos** a base de reembolso. Estos gastos extraordinarios requeridos son aquellos que como su nombre lo indica son necesarios y así lo solicita ya sea un facultativo médico, una institución educativa o un proveedor de un servicio. Los gastos extraordinarios requeridos presuponen que ambos padres (con patria potestad compartida) consintieron que su hija/hijo participara o acudiera al facultativo, institución o proveedor de servicio. Si fuese mediante reembolso, la parte que incurra en el gasto tendrá diez (10) días contados a partir de la fecha del pago para enviarle a la otra parte la evidencia. La otra parte tendrá a su vez diez (10) días contados a partir del recibo de la evidencia para pagarle a la parte que incurrió en el costo el porciento que le corresponda de lo que refleje el/los recibos.

Se ordena que la menor A.L.M.L. se beneficia del plan médico privado provisto por el Sr. Carlos Mercader Pérez.

Se ordena que no existe deuda por el efecto retroactivo de la pensión alimenticia.

Se apercibe a las partes sobre su deber continuo de informar al Tribunal, a la ASUME y a la otra parte cualquier cambio de dirección física, postal, de patrono, indicando en tal caso el nombre, dirección postal y número de teléfono del nuevo patrono. También deberá informar sobre la disponibilidad de póliza de seguro médico. Todo lo anterior tan pronto ello ocurra.

Se conceden $500.00 de honorarios de abogado a favor de la **Sra. Krystal Laracuente Cortés** por las vistas celebradas a ser pagados por el **Sr. Carlos Mercader Pérez** en el término de 50 días.

Se apercibe a las partes que cualquier cambio en las circunstancias de la persona custodia, de la persona no custodia y del o de la menor alimentista deberá ser notificada de inmediato mediante moción al Tribunal. Se les apercibe que de no cumplir con lo aquí ordenado es una violación a la ley y podrá conllevar la imposición de multas, penalidades, intereses, honorarios, gastos y costas y, además, desacato civil o criminal.

Se les apercibe, además, de su derecho a solicitar modificación de la pensión alimenticia cada tres (3) años desde la fecha en que la orden fue establecida y en cualquier momento, fuera del ciclo de tres (3) años, cuando exista justa causa para así hacerlo, tal como

variaciones o cambios significativos o imprevistos en los ingresos, capacidad de generar ingresos, egresos, gastos o capital del alimentante o alimentista, o en los gastos, necesidades o circunstancias del menor, o cuando exista cualquier otra evidencia de cambio sustancial en circunstancias.

De conformidad con la Orden Administrativa Núm. OAN-2003-03 del 26 de septiembre de 2003, la secretaria del Tribunal deberá notificar a las partes copia del informe de la Examinadora y de la correspondiente hoja de trabajo. Los cómputos están incluidos en el informe.

Se le apercibe, además, al **Sr. Carlos Mercader Pérez y la Sra. Krystal Laracuente Cortés** que, si incumplen con cualquier pago correspondiente a la pensión alimenticia regular aquí fijada o con cualesquiera de las órdenes contenidas en esta Sentencia, el Tribunal podrá declararle incurso en desacato y ordenar su encarcelamiento.

(Énfasis en el original)

Inconforme con tal determinación, el 19 de diciembre de 2023 la parte apelante presentó *Solicitud de Reconsideración*. La misma fue declarada No Ha Lugar por el Tribunal de Primera Instancia mediante *Orden* emitida el 20 de diciembre de 2023.

Aún insatisfecha, la señora Laracuente Cortés acudió ante este foro revisor mediante recurso de *Apelación* y realizó los siguientes señalamientos de error:

- **PRIMER ERROR:** Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia acogiendo las recomendaciones de la EPA con relación a no considerar el gasto de internet, de cuyo servicio se beneficia la menor, así como en distribuir el costo de niñera entre la totalidad del componente familiar cuando del testimonio del propio recurrido el servicio de niñera lo contrató él para dicho propósito exclusivamente.

- **SEGUNDO ERROR:** Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia acogiendo las recomendaciones de la EPA, a pesar de que se trajo a su atención que ésta realizó determinaciones de hecho basadas en el testimonio del recurrido, las cuales son falsas y no pudieron ser impugnadas conforme a derecho al la EPA no haber permitido la presentación de prueba de refutación y/o impugnación.

- **TERCER ERROR:** Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia determinando que no existía retroactivo.

- **CUARTO ERROR:** Erró el Honorable Tribunal de Primera Instancia al dictar Sentencia mediando pasión, prejuicio, parcialidad o error manifiesto al dejar sin efecto su orden previa en torno a que el pago de la pensión alimentaria se realizara a través de la Administración para el Sustento de Menores, tras los múltiples incumplimientos del recurrido con el pago de la pensión alimentaria, así como al imponer la cantidad nominal de $500.00 por concepto de honorarios de abogado, para lo cual concedió el término de 50 días cuando dicha partida se paga de forma inmediata.

Mediante nuestra *Resolución* del 23 de enero de 2024, le concedimos a la parte apelada hasta el martes 20 de febrero de 2024 para exponer su posición en torno al recurso. En cumplimiento con lo ordenado, la parte apelada presentó *Alegato en Oposición a "Apelación"*.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver el recurso ante nuestra consideración.

**II**

### A. Deferencia Judicial

Según es sabido, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical. *Argüello v. Argüello*, 155 DPR 62 (2001); *Pueblo v. Bonilla Romero*, 120 DPR 92, 111 (1987); *Hernández Maldonado v. Taco Maker*, 181 DPR 281 (2011); *SLG Rivera Carrasquillo v. AAA*, 177 DPR 341, 356 (2009); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 779 (2022).

Sin embargo, la deferencia judicial no es absoluta, pues podrá ser preterida en ciertas instancias. Nuestro Máximo Foro ha reiterado que, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v.*

*Real Legacy et al.*, 206 DPR 194, 219 (2021); *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *SLG Rivera Carrasquillo v. AAA*, supra, pág. 356; *Ortiz Ortiz v. Medtronic*, supra, pág. 778, *Pueblo v. Hernández Doble*, 210 DPR 850, 864 (2022).

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Empero, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435.

## B. Alimentos

En nuestro ordenamiento jurídico, los casos sobre alimentos de menores están revestidos del más alto interés público. El Tribunal Supremo de Puerto Rico ha manifestado que la obligación alimentaria tiene su fundamento en el derecho constitucional a la vida y en la solidaridad familiar. Por tanto, nuestro más Alto Foro ha resuelto que, en nuestra jurisdicción, los menores tienen un derecho fundamental a recibir alimentos. *Díaz Rodríguez v. García Neris*, 208 DPR 706 (2022); *Umpierre Matos v. Juelle, Mejías*, 203 DPR 254, 265 (2019); *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632 (2011). Más aún, el Tribunal Supremo de Puerto Rico ha reconocido que el derecho a reclamar alimentos constituye parte

del derecho a la vida, protegido por la Constitución de Puerto Rico. Artículo II, Sec. 7, Const. ELA, LPRA, Tomo 1. *Torres Rodríguez v. Carrasquillo Nieves*, 177 DPR 728, 738 (2009); *Umpierre Matos v. Juelle, Mejías*, supra, pág. 566.

En consonancia con lo anterior, el Art. 590 del Código Civil de Puerto Rico establece que los progenitores tienen sobre el o la menor sujeto a su patria potestad el deber de alimentarlo y proveerle lo necesario para su desarrollo y formación integral. Art. 590 del Código Civil de Puerto Rico, 31 LPRA sec. 7242[4]. El Código Civil define alimentos como "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". Art. 653 del Código Civil de Puerto Rico, 31 LPRA sec. 7531[5]. Respecto a cuando el alimentista es menor de edad, el referido artículo expresa que, "los alimentos comprenden también su educación las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales". 31 LPRA sec. 7531. Es por lo que, la pensión se reducirá o aumentará en proporción a los recursos del primero y a las necesidades del segundo. De acuerdo con este principio de proporcionalidad, se tomarán en consideración los recursos del alimentante y la posición social de la familia, así como el estilo de vida que lleva el alimentante. *Fonseca Zayas v. Rodríguez Meléndez*, supra, pág. 634.

Nuestro ordenamiento jurídico dispone que, "el derecho a recibir alimentos es personalísimo, imprescriptible, continuo e indivisible. No puede ser objeto de transacción, renuncia, gravamen o embargo. Tampoco puede compensarse la cantidad adeudada por

---

[4] Antes Artículo 153 del Código Civil de 1930, 31 LPRA sec. 601.
[5] Antes Art. 142 del Código Civil de 1930, 31 LPRA sec. 561.

dicho concepto con la que el alimentista deba al alimentante". Art. 657 del Código Civil de Puerto Rico, 31 LPRA sec. 7535. Por otro lado, nuestra más Alta Curia ha expresado que, la obligación de proveer alimentos es personal de cada uno de los progenitores, consecuentemente, debe ser satisfecha del propio peculio y de manera proporcional a sus recursos y a la necesidad del menor. *Díaz Rodríguez v. García Neris*, supra, pág. 718.

Respecto a quien está legitimado para reclamar judicialmente pensiones alimentarias, el Tribunal Supremo resolvió que mientras los hijos sean menores de edad y no hayan sido emancipados, el progenitor que tenga la patria potestad puede reclamar el pago de pensiones a nombre de los hijos, siempre y cuando no estén prescritas, pues el padre o madre tienen respecto de sus hijos no emancipados el deber de representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho y la acción para solicitar el pago de pensiones alimentarias es una de esas acciones. Sin embargo, una vez termina la patria potestad por cualquiera de las causas contempladas en la ley, esta facultad cesa y el alimentista queda legitimado para reclamar judicialmente la pensión. *Ríos v. Vidal*, 134 DPR 3 (1993).

Tratándose de un derecho de tan alto interés público, el Estado, como parte de su política pública, ha legislado ampliamente para velar por su cumplimiento. *Torres Rodríguez v. Carrasquillo Nieves*, supra, pág. 739; *Díaz Rodríguez v. García Neris*, supra, págs. 717-718. Estas leyes son la Ley Orgánica de la Administración para el Sustento de Menores, Ley Núm. 5 de 30 de diciembre de 1986, según enmendada por la Ley 178–2003, 8 LPRA sec. 501 *et seq.* y las *Guías Mandatorias para Computar las Pensiones Alimentarias en*

*Puerto Rico*[6], Reglamento Núm. 8529 del 30 de octubre de 2014, según enmendado (Guías).

La Ley para el Sustento de Menores le impuso carácter compulsorio al descubrimiento de prueba sobre la situación económica del alimentante en los casos relacionados con las pensiones alimentarias, con el fin de poder fijar la cuantía que se ha de pagar. *Pesquera Fuentes v. Colón Molina*, 202 DPR 93, 109 (2019). El Tribunal Supremo ha expresado que, la Ley para el Sustento de Menores va dirigida a los progenitores que se niegan a cumplir con su obligación de alimentar o si hay dudas sobre su capacidad económica. *Pesquera Fuentes v. Colón Molina*, supra, pág. 109. El propósito del referido estatuto es descubrir la suficiencia económica del alimentante para así establecer la pensión alimentaria. *Íd.*

Para determinar la capacidad económica de cada alimentante, es preciso tomar en cuenta *todos* los ingresos devengados por éste, hasta los que no aparezcan informados en la Planilla de Información Personal y Económica. *Rodríguez Rosado v. Zayas Martínez*, 133 DPR 406 (1993). El tribunal de instancia no está limitado a considerar sólo la evidencia testifical o documental sobre los ingresos. "Puede, al fijar la cuantía de la pensión, considerar aspectos tales como *el estilo de vida que lleva el alimentante, su capacidad para generar ingresos*, la naturaleza y cantidad de las propiedades con que cuenta, *la naturaleza de su empleo o profesión* y sus otras fuentes de ingreso." (Énfasis en el original). (Cita omitida). *Íd.*, págs. 72-73.

La Ley para el Sustento de Menores ordenó que se prepararan y adoptaran unas guías con el propósito de ayudar a determinar y

---

[6] Cabe destacar que, el 15 de febrero de 2024 fueron aprobadas las nuevas *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico*, no obstante, dado a que la controversia de epígrafe tomó lugar previo a su aprobación, son aplicables las de 2014.

modificar las pensiones alimentarias conforme al nivel económico de cada progenitor y las necesidades del alimentista. *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 562–563, (2012). Las Guías fueron adoptadas para fomentar la uniformidad del principio de proporcionalidad respecto a la imposición de pensiones alimentarias. *Díaz Rodríguez v. García Neris*, supra, pág. 719. Por medio del proceso evaluativo de las Guías, se toma en consideración el ingreso de ambos padres, debido a que, estos ostentan la obligación legal de aportar para la manutención de sus hijos o hijas. *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 563. Lo anterior se puede lograr, mediante el mecanismo de descubrimiento de prueba amplio y compulsorio antes esbozado. *Díaz Rodríguez v. García Neris*, supra, pág. 719.

Existen casos particulares donde no aplican las Guías para el cómputo de pensiones alimentarias. En específico, el alimentante no tiene el deber de descubrir prueba de su capacidad económica cuando este acepta su capacidad para costear la totalidad de la pensión alimentaria que supla las necesidades del menor. *Díaz Rodríguez v. García Neris*, supra, pág. 719; *Pesquera Fuentes v. Colón Molina,* supra, pág. 110. En los casos en los que el alimentante acepte voluntariamente la capacidad económica, solo procede determinar la suma justa y razonable a ser impuesta como pensión alimentaria conforme a las necesidades del alimentista. *Díaz Rodríguez v. García Neris*, supra, pág. 719; *Pesquera Fuentes v. Colón Molina,* supra, págs. 110-111. Finalmente, en estos casos la pensión alimentaria se fijará acorde a los preceptos dispuestos por el Código Civil, y tomando en consideración la condición económica y el estilo de vida del alimentante, atado a las necesidades del alimentista, integrando en estas el estilo de vida al cual estaba acostumbrado. *Díaz Rodríguez v. García Neris*, supra, pág. 720; *Santiago, Maisonet v. Maisonet Correa,* supra, pág. 566.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En su primer señalamiento de error, la parte apelante sostiene que, el foro de primera instancia incidió al dictar *Sentencia* y acoger las recomendaciones de la EPA con relación a no considerar el gasto de internet a pesar de que, a su juicio, la menor se beneficiaba de tal servicio. Así como al distribuir el costo de niñera entre la totalidad del componente familiar cuando del testimonio de la parte apelada surgía que este contrató el servicio de niñera.

Como segundo señalamiento de error, la parte apelante arguye que, el foro primario erró al acoger las recomendaciones de la EPA en la *Sentencia*, a pesar de haber traído a su atención que esta realizó determinaciones de hechos basadas en el testimonio de la parte apelada. Las cuales entendía que son falsas y que no pudieron ser impugnadas conforme a derecho debido a que la EPA no permitió la presentación de prueba de refutación y/o impugnación.

Por otro lado, en su tercer señalamiento de error, la parte apelante expresa que, el Tribunal de Primera Instancia se equivocó al determinar mediante *Sentencia* que no existía retroactivo.

Finalmente, en su cuarto y último señalamiento de error, la parte apelante sostiene que, incidió la primera instancia judicial al dictar *Sentencia* donde media pasión, prejuicio, parcialidad o error manifiesto al dejar sin efecto su orden previa respecto a que el pago de la pensión alimentaria se realizara a través de la Administración para el Sustento de Menores debido a alegados múltiples incumplimientos de la parte apelada con el pago de la pensión alimentaria. Además, al imponer una cantidad de quinientos dólares ($500.00) en concepto de honorarios de abogado a pagarse

en un término de cincuenta (50) días cuando, a su juicio, tal partida se paga de forma inmediata.

Como podemos ver, los señalamientos de error esbozados por la parte apelante versan sobre la apreciación de la prueba. No obstante, esta no presentó la Transcripción de la Prueba Oral o una Exposición Narrativa conforme lo dispone el Reglamento de este Tribunal. De acuerdo a lo anterior, la parte apelante no nos colocó en posición de variar la decisión del foro apelado.

Reafirmamos que, las determinaciones de hechos y de credibilidad del tribunal sentenciador deben ser merecedoras de gran deferencia por parte de los foros apelativos, puesto que, el juzgador de instancia es quien –de ordinario– se encuentra en mejor posición para aquilatar la prueba testifical.[7] Tal deferencia podrá ser preterida cuando medie pasión, prejuicio, parcialidad o error manifiesto[8].

En la controversia de epígrafe, la parte apelante no logró demostrar la existencia de pasión, prejuicio, parcialidad o error manifiesto. Por tanto, procede que se mantenga el dictamen apelado.

**VI**

Por los fundamentos antes expuestos, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[7] *Ortiz Ortiz v. Medtronic*, supra, pág. 779.
[8] *Serrano Muñoz v. Auxilio Mutuo*, supra, pág. 741; *Santiago Ortiz v. Real Legacy et al.*, supra, pág. 219; *Ortiz Ortiz v. Medtronic*, supra, pág. 778.